454 So.2d 632 (1984)
AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, Appellant,
v.
Joella DeGRIO, Appellee.
No. 82-1865.
District Court of Appeal of Florida, Third District.
July 17, 1984.
Rehearing Denied September 7, 1984.
*634 Steel, Hector & Davis and Arthur J. England, Jr., Harold D. Smith, Miami, for appellant.
Hershoff & Levy and Jay Levy, George M. Nachwalter, Miami, for appellee.
Before NESBITT and JORGENSON, JJ., and FERRIS, JOHN G., Associate Judge.
NESBITT, Judge.
The American Federation of Government Employees (AFGE) appeals a final judgment finding it liable for negligent infliction of emotional distress and awarding damages in the amount of $400,000. We reverse.
Joella DeGrio, the plaintiff below and appellee herein, was hired by the United States Government in 1961 as a civilian clerk to the United States Army. She was advised on June 15, 1976 that her employment was terminated effective June 25, 1976. DeGrio was a dues-paying member of Local 2447, a local affiliate of the AFGE, a national union and the defendant below. Although DeGrio did participate in local activities and her membership in the local made her a member of the national union, she was not a member of the exclusive bargaining unit of the local and her job was not covered by the collective bargaining agreement.
As both a federal civilian employee and a dues-paying member of the union, DeGrio had two sets of rights when her employment was terminated. Under federal law and Civil Service Commission regulations, she was eligible to appeal her job termination to the Commission. 5 C.F.R. pts. 752, 772. Additionally, as a dues-paying member of the union, DeGrio had a right to request union representation on this appeal. See Exec. Order No. 11,491 (Oct. 29, 1969) (set out as a note at 5 U.S.C.A. § 7101 (1980)).
By a letter dated July 7, 1976, DeGrio indicated that she wished to appeal her job termination and named the AFGE as her representative, stating that the specific name of the national representative would be forthcoming. The AFGE's district vice president received a copy of this letter, and wrote to William Mudgett, a national representative for the AFGE, and informed him of DeGrio's case. Mudgett then contacted the local's president and advised him that DeGrio should notify the Commission that he, Mudgett, would be her representative so he could receive correspondence directly from the Commission. Mudgett was never so designated by DeGrio to the Commission.
Sometime in July 1976, Mudgett picked up DeGrio's file from the local union. On or about July 19, 1976, Mudgett received a letter from DeGrio transmitting certain documents regarding her job termination. Other than this letter, there was no contact between Mudgett and DeGrio before or after the job termination hearing.
On July 29, 1976, the Commission sent DeGrio a copy of her complete file for the appeal, advising her to complete an included form if she desired a hearing. She completed the form indicating she wished a hearing and listed her witnesses and a summary of their expected testimony. Mudgett was not named in the form as DeGrio's representative and he did not receive a copy of the form.
The case was assigned to a hearing officer who notified DeGrio on August 26, that a hearing was set for September 9, 1976. DeGrio and her witnesses appeared before the hearing officer on the indicated date but Mudgett did not attend. There was conflicting testimony as to whether or not Mudgett was aware of the hearing beforehand, but the trial court determined by *635 competent substantial evidence that he did have such knowledge. DeGrio told the hearing officer that she did not wish to proceed with the hearing without her national representative. The hearing officer said he could not determine whether another hearing could be set until he received a written explanation from Mudgett concerning his absence. Mudgett never explained to the hearing officer his failure to attend and consequently no hearing was ever held. The hearing officer ultimately upheld DeGrio's termination on the basis of her employment file. His recommendation went up to the full Commission without challenge on December 9, 1976, and was there adopted without change.
On April 13, 1978, DeGrio brought a negligence action against the AFGE and Mudgett in state court. The complaint sought compensatory damages for emotional and physical stress which required hospitalization, for impaired working ability, and for future loss of wages. The basis of the action was that Mudgett's nonappearance at the hearing on September 9, 1976 was so traumatic to DeGrio that it caused a stress-induced epileptic seizure on September 17, 1976, resulting in a fall causing injuries. DeGrio also sought punitive damages on the ground that Mudgett's failure to appear at the hearing and his later failure to explain his nonappearance constituted a willful and wanton disregard of DeGrio's rights. Mudgett was eventually dismissed as a party defendant and is no longer involved in this case as a party.
The AFGE petitioned this court for a writ of prohibition on the ground that the trial court lacked subject matter jurisdiction. After oral argument, this court dismissed the petition for prohibition without opinion. Mudgett v. Gale, 366 So.2d 901 (Fla.3d DCA), cert. denied, 376 So.2d 74 (Fla. 1979), cert. denied, 444 U.S. 1080, 100 S.Ct. 1032, 62 L.Ed.2d 764 (1980).
Following the prohibition proceedings, the trial court struck the punitive damages claim in the complaint. A nonjury trial was conducted on September 22-23, and December 11, 1981. The court found for DeGrio on the negligence claim and awarded $250,000 in compensatory damages. Concluding its earlier order striking the punitive damages claim was error, the court also awarded $150,000 in punitive damages. This appeal followed.
The AFGE maintains, as it has throughout the proceedings in this case, that the circuit court lacked subject matter jurisdiction over this matter. DeGrio counters claiming that this court previously heard oral argument on the merits of the jurisdictional question and subsequently dismissed the petition for prohibition, and that this dismissal was a ruling on the merits and now has a res judicata effect. This same argument was advanced without success in Public Employees Relations Commission v. District School Board of De Soto County, 374 So.2d 1005 (Fla. 2d DCA 1979), cert. denied, 383 So.2d 1193 (Fla. 1980). As in the present case, the court in Public Employees had previously discharged petitions for prohibition without opinion. The court there found:
It would be pure speculation to attribute any particular reasoning to the majority of the two prior panels of this court which decided that PERC's suggestions for writ of prohibition should be denied. The point is that those denials could have rested on reasons other than the merits of the jurisdictional question posed in those prior proceedings. This being the case, we hold that this court's prior denials of PERC's suggestions for writ of prohibition do not foreclose us from considering the jurisdictional issue on this appeal.
Id. at 1010. Similarly, we find that the dismissal of a writ of prohibition without opinion is not res judicata unless the sole possible ground was that the court acted on the merits of the jurisdictional question, or unless it affirmatively appears that the dismissal was intended to be on the merits. Id. See also State, Department of Environmental Regulation v. Falls Chase Special Taxing District, 424 So.2d 787 (Fla. 1st DCA 1982), review denied, 436 So.2d 98 (Fla. 1983); Coral Reef Nurseries, Inc. v. *636 Babcock Co., 410 So.2d 648 (Fla. 3d DCA 1982). Therefore, our prior dismissal, without opinion, of the petition for prohibition in this case does not foreclose us from considering the jurisdictional question on this appeal. Thus, we now proceed to address that issue.
The AFGE argues that the breach of duty complained of by DeGrio is a breach of the duty of fair representation owed by a labor union to its member and that state courts' jurisdiction has been preempted in this area. See San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). DeGrio, on the other hand, argues that the duty of fair representation is not involved, and that the AFGE breached a common law duty to act with reasonable care, which was imposed upon the AFGE when it voluntarily undertook to represent DeGrio on her job termination appeal. We agree with DeGrio that the duty of fair representation owed by a labor union to its members in certain circumstances is not involved here.
DeGrio is correct in pointing out that the source of the duty of fair representation is the exclusivity of the union as the bargaining representative. The United States Supreme Court, in Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), stated:
The statutory duty of fair representation was developed over 20 years ago in a series of cases involving alleged racial discrimination by unions certified as exclusive bargaining representatives under the Railway Labor Act, see Steele v. Louisville & N.R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173; Tunstall v. Brotherhood of Locomotive Firemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187, and was soon extended to unions certified under the N.L.R.A., see Ford Motor Co. v. Huffman, [345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048]. Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.
386 U.S. at 177, 87 S.Ct. at 910. The Court further found that:
The federal labor laws seek to promote industrial peace and the improvement of wages and working conditions by fostering a system of employee organization and collective bargaining. [citation omitted]. The collective bargaining system as encouraged by Congress and administered by the NLRB of necessity subordinates the interests of an individual employee to the collective interests of all employees in a bargaining unit. [citation omitted]. This Court recognized in Steele that the congressional grant of power to a union to act as exclusive collective bargaining representative, with its corresponding reduction in the individual rights of the employees so represented, would raise grave constitutional problems if unions were free to exercise this power to further racial discrimination. 323 U.S., at 198-199, 65 S.Ct., at 230-231, 89 L.Ed. 173. Since that landmark decision, the duty of fair representation has stood as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law.
386 U.S. at 182, 87 S.Ct. at 912. The Court then held that:
A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. [citations omitted].
386 U.S. at 190, 87 S.Ct. at 916. See also International Brotherhood of Electrical Workers v. Foust, 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979) ("Steele held that when Congress empowered unions to bargain exclusively for all employees in a particular bargaining unit, and thereby subordinated individual interests to the interests of the unit as a whole, it imposed on unions a correlative duty `inseparable from the power of representation' to exercise *637 that authority fairly."). It is apparent that there is a direct relationship between the existence of a duty of fair representation and the exclusive bargaining status of a union. The duty is imposed only on a union when it is the exclusive representative of a bargaining unit. This duty is imposed for the benefit of the members of the unit because they have given up their individual rights of representation for the good of the unit as a whole. Where a union is not the exclusive bargaining representative of a union member, there is no statutory duty of fair representation owed by the union to that member. See Archer v. Airline Pilots Association International, 609 F.2d 934 (9th Cir.1979), cert. denied, 446 U.S. 953, 100 S.Ct. 2920, 64 L.Ed.2d 810 (1980).
In the present case, it is undisputed that DeGrio was not a member of the exclusive bargaining unit. Therefore, she could have chosen anyone she wished to represent her at the hearing. The AFGE was not her exclusive bargaining representative and, consequently, did not owe her a duty of fair representation. See Foust; Vaca; Steele; Archer.
The record, however, does support the trial court's finding that the AFGE gratuitously undertook the obligation of representing DeGrio at her job termination hearing. In so doing, the AFGE assumed a common law duty to exercise due care in that representation.
It is axiomatic that an action undertaken for the benefit of another, even gratuitously, must be performed in accordance with an obligation to exercise reasonable care.
Barfield v. Langley, 432 So.2d 748, 749 (Fla. 2d DCA 1983). Accord Banfield v. Addington, 104 Fla. 661, 140 So. 893 (1932); Kaufman v. A-1 Bus Lines, Inc., 416 So.2d 863 (Fla. 3d DCA 1982). See generally 38 Fla.Jur.2d Negligence § 13 (1982). The duty the AFGE allegedly breached, therefore, arises from the common law of negligence, and not from federal labor policy. Accordingly, we find that the trial court had subject matter jurisdiction in the present case.[1]
We now turn to the merits of the negligence claim. In essence, the cause of action in this case is based upon the AFGE's negligent infliction of emotional distress on DeGrio. This immediately brings to the forefront Florida's impact rule. The rule in Florida is that absent physical impact upon the plaintiff, damages may not be recovered for mental anguish or physical injuries resulting from emotional stress caused by the negligence of another. Gilliam v. Stewart, 291 So.2d 593 (Fla. 1974); Cadillac Motor Car Division, General Motors Corp. v. Brown, 428 So.2d 301 (Fla.3d DCA 1983); Champion v. Gray, 420 So.2d 348 (Fla. 5th DCA 1982); Claycomb v. Eichles, 399 So.2d 1050 (Fla.2d DCA 1981). An exception to the impact rule has long existed, however, where the defendant's conduct goes beyond simple negligence and amounts to willful, wanton, malicious conduct, the type of conduct which would justify an award of punitive damages. Kirksey v. Jernigan, 45 So.2d 188 (Fla. 1950).
In the instant case, the trial court concluded that the AFGE's conduct, through the actions of Mudgett, was such that malice could be imputed. Thereby, the court found that the exception to the impact rule applied. We disagree.
The conduct complained of by DeGrio was Mudgett's failure to appear at the September 9, 1976 job termination hearing and his subsequent failure to explain his absence in writing to the hearing officer resulting in no hearing ever being held. We find, as a matter of law, that these actions do not justify the imputation of malice. A simple failure to appear at a *638 hearing and adequately represent one was certainly not the type of conduct the court had in mind when it created the malicious conduct exception to the impact rule. See Kirksey (malicious conduct existed when, without authority, undertaker took body of five-year-old and embalmed it, and then refused to turn it over to the mother until she paid him $50, holding the body as security); Korbin v. Berlin, 177 So.2d 551 (Fla. 3d DCA 1965), cert. denied, 183 So.2d 835 (Fla. 1966) (malicious conduct present when defendant approached six-year-old girl and told her that her mother had stolen another woman's husband and was sleeping with a man in her room and that God was going to punish them, knowing that the statements were false). Cf. Singleton v. Foreman, 435 F.2d 962 (5th Cir.1970) (attorney acted maliciously toward client when he "exploded into a torrent of abuse" at client when she indicated a desire to settle her divorce action, refused to allow her to settle, and threatened to ruin both the client and her husband; the attorney had also taken the client's jewelry and attempted to take her coat in the middle of winter in Tennessee for security for his fee); Stinson v. Feminist Women's Health Center, Inc., 416 So.2d 1183 (Fla. 1st DCA 1982) (attorneys acted maliciously toward their clients where they "obfuscated, manipulated and deceived their clients in a tortious attempt to take all of the settlement money).
The supreme court held in Gilliam that:
[t]here may be circumstances under which one may recover for emotional or mental injuries, as when there has been a physical impact or when they are produced as a result of a deliberate and calculated act performed with the intention of producing such an injury by one knowing that such act would probably  and most likely  produce such an injury, but those are not the facts in this case.
291 So.2d at 595. Likewise, those are not the facts in the present case either. Accordingly, under the present law in Florida, DeGrio may not recover damages for mental anguish or for her physical injuries resulting from emotional stress allegedly caused by Mudgett's negligent nonappearance at the hearing. Cf. Truesdell v. Proctor, M.D., 443 So.2d 107 (Fla. 1st DCA 1983). The trial court, therefore, was in error when it awarded damages against the AFGE.
In rendering this decision, we are fully aware of the criticism lodged against Florida's impact rule by the Florida courts, this court included. See Rivera v. Randle Eastern Ambulance Service, Inc., 446 So.2d 200, 202 n. 1 (Fla. 3d DCA 1984); Champion; Stewart v. Gilliam, 271 So.2d 466 (Fla. 4th DCA 1972), rev'd, 291 So.2d 593 (Fla. 1974). There are, however, circumstances in which the impact rule does not work an unjustifiable hardship on a party. Chief Judge Reed indicated that:
there is more underlying the impact doctrine than simply problems of proof, fraudulent claims, and excessive litigation. The impact doctrine gives practical recognition to the thought that not every injury which one person may by his negligence inflict upon another should be compensated in money damages. There must be some level of harm which one should absorb without recompense as the price he pays for living in an organized society.
Stewart, 271 So.2d at 477 (dissenting opinion which was adopted by the supreme court in relevant part, 291 So.2d at 595). The circumstances of the present case may well illustrate an area where the impact rule, even if modified by the supreme court, should retain some vitality. In all fairness to DeGrio, the plaintiff in the instant case, however, we certify the following question to the supreme court as passing on a matter of great public importance:
Should Florida abrogate the "impact rule" and allow recovery for the physical consequences resulting from mental or emotional stress caused by a negligent omission on the part of a defendant in the absence of both physical impact upon the *639 plaintiff and malicious conduct by the defendant?[2]
Because we find Florida's impact rule to be dispositive of this case under present law, we find it unnecessary to consider the other points raised by the AFGE. Accordingly, the judgment under review is reversed.
JORGENSON, Judge, concurring in part, dissenting in part.
Because bound by the still present impact rule, I concur in the majority's result. I respectfully dissent from that portion of the opinion that concludes that the impact rule should retain some vitality.
Although I agree that circumstances may exist "in which the impact rule does not work an unjustifiable hardship on a party," those circumstances exist, if at all, by mere chance, perhaps of proximate cause, but not by the intent and logic of the rule itself. Surely "[t]here must be some level of harm which one should absorb without recompense as the price he pays for living in an organized society," but an arbitrary rule which requires the presence of the physical in a legal action premised on damage to one's emotions is a blunt and brutal device indeed for determining, in a given case, just what that acceptable level is.
If I have not made it sufficiently clear in the past, see Rivera v. Randle Eastern Ambulance Service, Inc., 446 So.2d 200, 202 n. 1 (Fla.3d DCA 1984), I now join Judge Daniel Pearson in expressly stating that the impact rule should be forever abolished and replaced by some more enlightened rule, see National Car Rental System v. Bostic, 423 So.2d 915 (Fla.3d DCA 1982) (Daniel Pearson, J., concurring specially), review denied mem., 436 So.2d 97, 99 (Fla. 1983).
I join in the certification of the question to the supreme court in the fervent hope that it will be answered in the affirmative.
NOTES
[1] After due consideration, we have rejected the AFGE's argument that the duty involved here was a duty of fair representation. We note, however, that even if that duty were involved, this would not necessarily have divested the trial court of jurisdiction. See Vaca. Cf. Farmer v. United Bhd. of Carpenters and Joiners of America, Local 25, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) (state court had jurisdiction over case involving intentional infliction of emotional distress despite some overlap with federal labor policy).
[2] We note that this case is factually distinguishable from those in which the courts have previously seen fit to certify questions to the supreme court concerning the impact rule. These other cases have involved automobile accidents resulting in deaths to close relatives of the plaintiffs; the seeing of these deaths allegedly causing injuries to the plaintiffs. See Cadillac; Champion.