528 So.2d 376 (1987)
Joanna SGUROS, Personal Representative of the Estate of Peter Louis Sguros, Deceased, for the Benefit of Joanna Sguros, Surviving Spouse, and the Estate of Peter Louis SGUROS, Individually, Appellant,
v.
BISCAYNE RECREATION DEVELOPMENT COMPANY, a Florida Corporation, Appellee.
Nos. 85-2776, 85-2909.
District Court of Appeal of Florida, Third District.
December 29, 1987.
*377 Rossman, Baumberger & Peltz and Robert D. Peltz, Miami, for appellant.
Hayden & Milliken and John D. Kallen and Domingo Rodriguez, Miami, for appellee.
Joseph C. Segor, Miami, for the Academy of Florida Trial Lawyers as amicus curiae.
Before BARKDULL, HUBBART and JORGENSON, JJ.

ON MOTION FOR REHEARING GRANTED
The opinion of this court, filed on August 4, 1987, is withdrawn and the following is substituted in its stead.
JORGENSON, Judge.
Joanna Sguros appeals from a summary final judgment entered in favor of Biscayne Recreation Development Company [BRD] on a claim for the alleged wrongful death of her husband, Peter Sguros, due to BRD's failure to provide adequate security protection at Dinner Key Marina.[1] We affirm the trial court's order because as a matter of law the impact doctrine bars this wrongful death action.
The relevant facts of this case may be summarized as follows. Peter and Joanna Sguros lived aboard their motorized sailboat, the "Scrimshaw," which was docked at Dinner Key Marina. The Sguroses had a written dockage agreement with the City of Miami which they had renewed annually since 1976. The agreement contained no provision for security services. On November 26, 1980, the City hired BRD as an independent contractor to operate and manage Dinner Key Marina. The contract between the City and BRD mentioned security as one of the services to be supplied by BRD, but did not specify the type, quality, or quantity of protection to be furnished by BRD. BRD subsequently subcontracted with Pan American Protective Industries, Inc., for private guard and patrol services. This contract was in effect at the time of Peter Sguros's death.
On November 21, 1981, the Sguroses were asleep on board the "Scrimshaw" when, at approximately 3:30 a.m., Peter was awakened by the sound of the engine starting. After alerting Joanna to the presence of intruders above deck, Peter attempted to turn the engine off from below by cutting the fuel line. At this time, he was stricken by a fatal heart attack. Joanna was unable to telephone for assistance since the telephone line had been severed. Armed with Peter's rifle, Joanna entered the cockpit, turned off the engine, and called to her neighbors to summon help. The Miami police, fire rescue personnel, and the medical examiner responded to the marina. Their investigation revealed that no one had observed intruders board or flee the "Scrimshaw," although one neighbor had been awakened by the sound of footsteps running down the pier immediately prior to Joanna's call for assistance. The investigators discovered that several of the vessel's lines had been untied, leaving the "Scrimshaw" secured by only one line. They also discovered that the telephone connection had been cut. No useful *378 fingerprints were found. The intruders were never apprehended.
Following an autopsy of Peter Sguros, the associate Dade County medical examiner determined the cause of death to be arteriosclerotic cardiovascular disease. Fifty-nine-year-old Peter Sguros had suffered from severe coronary atherosclerosis and had been taking medications for his heart disease as prescribed by his personal physician.
Joanna Sguros instituted an action against BRD for the wrongful death of her husband. BRD moved for summary final judgment on the grounds that inter alia no cause of action against BRD existed in the absence of any impact or physical contact between Peter and the intruders.[2] Following a hearing on the motion for summary final judgment, the trial court concluded that Joanna Sguros's wrongful death action was barred by the impact doctrine.[3] The trial court denied Joanna Sguros's motion for rehearing.
We affirm the trial court's order granting summary final judgment in favor of BRD upon a holding that the impact doctrine bars recovery. The impact doctrine precludes recovery for injuries caused by a defendant's negligence in the absence of physical impact to the claimant. Gilliam v. Stewart, 291 So.2d 593 (Fla. 1974). In Gilliam, the Florida supreme court quashed an opinion from the district court of appeal, Stewart v. Gilliam, 271 So.2d 466 (Fla. 4th DCA 1972), which rejected the impact rule and permitted the plaintiff's cause of action for negligence in the absence of physical impact. The plaintiff in Gilliam had suffered a heart attack after seeing a car crash into her home. The supreme court held that the plaintiff could not maintain a cause of action for her injuries because she had not sustained any physical impact. In view of the rule requiring physical impact to a plaintiff as a predicate for recovering damages, it is clear that Sguros's action was properly disposed of by way of final summary judgment for BRD.
Under existing Florida law, injury induced or occasioned by mere observance of a traumatic event is insufficient to meet the physical impact requirement. See, e.g., Doyle v. Pillsbury Co., 476 So.2d 1271 (Fla. 1985) (no recovery due to lack of impact where plaintiff, after observing large insect in can of peas she had opened, fell backwards over a chair in fright; no impact because plaintiff never ingested contents of can); Brown v. Cadillac Motor Car Div., 468 So.2d 903 (Fla. 1985) (no cause of action for driver who experienced no physical impact or injury from accident where defective automobile lurched forward and killed driver's mother); Crenshaw v. Sarasota County Pub. Hosp. Bd., 466 So.2d 427 (Fla. 2d DCA 1985) (no cause of action for mother whose stillborn baby was inadvertently placed with hospital's laundry and mutilated due to absence of physical impact upon the mother); Davis v. Sun First Nat'l Bank of Orlando, 408 So.2d 608 (Fla. 5th DCA 1981) (act of robber in handing bank teller holdup note did not constitute physical impact and could not satisfy impact requirement to afford teller action for negligent infliction of emotional distress), rev. denied, 413 So.2d 875 (Fla. 1982). Peter Sguros's apprehension resulting from the realization that intruders were aboard the "Scrimshaw" may not be considered "impact."
Moreover, the arguably nefarious intent of the nighttime intruders aboard the "Scrimshaw" fails to bring Sguros's action within the exception to the impact rule set forth in Kirksey v. Jernigan, 45 So.2d 188 (Fla. 1950). In Kirksey, the Florida supreme court held that liability would attach for a plaintiff's psychic injury engendered by a defendant's intentionally tortious conduct. Sguros's claim against the defendant, BRD, is based upon BRD's alleged negligence in providing security *379 which clearly does not amount to willful, wanton, or malicious conduct. Kirksey is manifestly inapplicable to this case because the tortious acts which precipitated Peter Sguros's fear and heart attack were committed not by BRD but by third party, anonymous intruders whose criminal actions cannot be imputed to BRD. Crane v. Loftin, 70 So.2d 574 (Fla. 1954), is similarly inapposite. Crane held that allegations that the defendant's train was operated at an excessive speed were insufficient to state a cause of action for the plaintiff's mental anguish based upon the alleged willful and wanton negligence of the defendant. Both Crane and Kirksey concerned the egregiousness of the defendant's tortious act in causing the plaintiff's emotional distress. Those cases do not address the issue of when an intentional tort committed by a criminal third party may be imputed to an allegedly negligent defendant.
Nor is the instant case within the parameters of the narrow exception to the impact rule developed by the Florida supreme court in Champion v. Gray, 478 So.2d 17 (Fla. 1985). In Champion, the court modified the impact rule to recognize a cause of action for a plaintiff who suffers a "significant discernible physical injury when such injury is caused by psychic trauma resulting from negligent injury imposed on another who, because of his relationship to the injured party and his involvement in the event causing that injury, is foreseeably injured." Id. at 20. Pursuant to this modification, the personal representative of the estate of a woman who died of shock from the psychic trauma of seeing the body of her dead daughter at the automobile accident scene could maintain a negligence action against the driver of the car. Without disapproving Gilliam, the court fashioned a dichotomy between "two distinct emotional circumstances." Id. at 19. The first case involved fear for one's own safety as exemplified by Gilliam. The second case involved anxiety or stress for the injury or death of another, e.g., the case present in Champion. The court specifically restricted a cause of action to the second category. Peter Sguros's death unmistakably falls into the first category, thus barring his estate's recovery for BRD's negligence for Peter's death. See, e.g., Ferretti v. Weber, 513 So.2d 1333 (Fla. 3d DCA 1987) (plaintiff could not recover for emotional distress of witnessing automobile accident where "live-in" girlfriend was killed; even if they had been married, action would still have been dismissed for lack of impact).
Despite our strong view that the impact rule should be abolished, American Fed'n of Gov't Employees v. DeGrio, 454 So.2d 632, 639 (Fla. 3d DCA 1984) (Jorgenson, J., concurring in part, dissenting in part), aff'd, 484 So.2d 1 (Fla. 1986); Rivera v. Randle Eastern Ambulance Serv., Inc., 446 So.2d 200, 202 n. 1 (Fla. 3d DCA 1984); National Car Rental Sys. Inc. v. Bostic, 423 So.2d 915, 918 (Fla. 3d DCA 1982) (Pearson, Daniel, J., concurring specially), rev. denied, 436 So.2d 97, 99 (Fla. 1983), we are nonetheless bound by "this state's inexplicable affinity with the impact rule." Rivera, 446 So.2d at 201-02. In the absence of physical impact to Peter Sguros, we must affirm the final summary judgment granted in favor of BRD.
Because we affirm the trial court's order granting final summary judgment for BRD on the basis of the impact rule, we need not address the foreseeability issue.
Affirmed.
BARKDULL, J., concurs.
HUBBART, Judge (dissenting).
I agree entirely with the court's decision to grant rehearing in this case and to withdraw our prior August 4, 1987 opinion. 12 F.L.W. 1886. This prior opinion had affirmed, over my dissent, the final summary judgment entered below in favor of the defendant Biscayne Recreation Development Company [BRD] primarily on the basis that BRD's alleged negligence in failing to provide adequate security to protect houseboat tenants at the Dinner Key Marina was not, as a matter of law, the proximate cause of the heart attack and death of the plaintiff's decedent. Id. The court today recedes from this position and affirms the subject summary judgment solely *380 on the basis that the action is barred by the impact doctrine stated in Gilliam v. Stewart, 291 So.2d 593 (Fla. 1974)  an alternative ground which the court had previously relied on in affirming the summary judgment in its August 4, 1987 opinion. 12 F.L.W. 1886. I welcome the court's decision receding from its no proximate cause position, but cannot agree that the action below is barred by the impact doctrine. I must, therefore, once again dissent.

I
Because, in my view, any consideration of whether the impact doctrine is applicable in this case depends on whether BRD's alleged negligence was arguably, on this record, a proximate cause of the death of the plaintiff's decedent, it is essential to first discuss the proximate cause issue. Moreover, the issue must be addressed, in any event, as the trial court appears to have granted the summary judgment for BRD based, in part, on no proximate cause grounds.
In a nutshell, all agree that BRD's alleged negligence in the performance of its security services at the Dinner Key Marina was a cause-in-fact of the decedent's heart attack and death; but for BRD's alleged negligence, the nighttime intruders would not have been able to burglarize the decedent's houseboat and the decedent would not have had a heart attack and died upon discovering the nighttime intruders aboard his houseboat. All agree further that the aforesaid nighttime intrusion was a foreseeable consequence of BRD's alleged negligence; plainly, criminal activity, as here, may be reasonably anticipated when the security services designed to prevent such activity are negligently performed. The gist of BRD's legal position, however, is that it was unforeseeable, as a matter of law, that the plaintiff's decedent would have a heart attack and die upon discovering the nighttime intruders aboard his houseboat because such a result was highly unusual, extraordinary, bizarre, or, stated differently, was beyond the scope of any fair assessment of the danger created by BRD's alleged negligence  a position which the trial court apparently accepted below. This argument, in my view, has no merit for two reasons.
First, it seems plain to me that some injury to the plaintiff's decedent was obviously foreseeable as a result of the nighttime intrusion by burglars into the decedent's houseboat dwelling. Clearly, when burglars enter a person's home, the people in the home are in some physical danger, as it is well known that burglars often physically abuse their victims. Because some injury to the plaintiff's decedent was obviously foreseeable in this case, it follows that the defendant BRD is responsible for the full extent of the injuries actually suffered by the plaintiff's decedent, even though the resultant heart attack and death might not have been reasonably anticipated. This is so because the law in Florida is well settled that "[i]n order for injuries to be a foreseeable consequence of a negligent act, it is not necessary that the initial tortfeasor be able to foresee the exact nature and extent of the injuries or the precise manner in which the injuries occur. Rather, all that is necessary in order for liability to arise is that the tort-feasor be able to foresee that some injury will likely result in some manner as a consequence of his negligent acts." Crislip v. Holland, 401 So.2d 1115, 1117 (Fla. 4th DCA 1981), rev. denied, 411 So.2d 380 (Fla. 1981), quoted with approval in Bennett M. Lifter, Inc. v. Varnado, 480 So.2d 1336, 1340 (Fla. 3d DCA 1985), rev. dismissed, 484 So.2d 7 (Fla. 1986) (emphasis added). Stated differently, "[i]n determining foreseeability, it is not necessary to `be able to foresee the exact nature and extent of the injuries [suffered] or the precise manner in which the injuries occur'; it is only necessary that `the tort-feasor be able to foresee that some injury will likely result in some manner as a consequence of his negligent acts.'" Paterson v. Deeb, 472 So.2d 1210, 1218 (Fla. 1st DCA 1985), revs. denied, 484 So.2d 8, 9 (Fla. 1986) (emphasis added).
Second, I think it perfectly foreseeable, in any event, that a houseboat tenant might very well have a heart attack and die, when, as here, nighttime intruders enter *381 the tenant's abode and attempt to steal the boat. Such a reaction can hardly be described as highly unusual, extraordinary, bizarre, or beyond the scope of the danger created by BRD's negligence in allowing such intruders to enter the decedent's dwelling. This is so because people, for good reason, become extremely frightened whenever thieves penetrate their home at night  and extreme fright, as we all know, may very well lead to a heart attack and death.[1]
I think it is clear, then, that BRD's negligent performance of its security services on the night in question was, on this record, a proximate cause of the heart attack and death of the plaintiff's decedent. At the very least, a question of fact is presented on this issue, given the established rule that proximate cause issues are, generally speaking, factual issues for juries to decide  and, accordingly, a summary judgment for the defendant BRD on the basis of a lack of proximate cause was entirely inappropriate. Stated differently, BRD is arguably on this record legally responsible for the criminal acts of the said nighttime intruders which caused the decedent's heart attack and death. See, e.g., Helman v. Seaboard Coast Line R.R., 349 So.2d 1187, 1189 (Fla. 1977); Tieder v. Little, 502 So.2d 923, 926 (Fla. 3d DCA), revs. denied, 511 So.2d 298, 300 (Fla. 1987); Stahl v. Metropolitan Dade County, 438 So.2d 14, 21 (Fla. 3d DCA 1983).

II
Turning now to a consideration of the impact doctrine, all agree that the said doctrine would not bar a wrongful death action by the plaintiff against the nighttime intruders themselves, because the act of malice or intentional tort exception to the impact doctrine stated in Kirksey v. Jernigan, 45 So.2d 188 (Fla. 1950) and Crane v. Loftin, 70 So.2d 574 (Fla. 1954), would be fully applicable:
"It has been recognized in this jurisdiction that where the facts giving rise to an action in tort for personal injuries are such as to reasonably imply malice ... recovery for mental pain and anguish unconnected with direct physical impact or trauma may be authorized. Kirksey v. Jernigan, Fla., 45 So.2d 188."
Crane, 70 So.2d at 575. Plainly, the nighttime intrusion onto the decedent's houseboat was both a criminal act of malice (a burglary) and an intentional tort (a trespass). The same result obtains, in my view, as to a wrongful death action brought, as here, not against the nighttime intruders, but against BRD itself because, as demonstrated above, BRD is legally responsible for the criminal acts of the nighttime intruders.
The court, however, narrowly interprets the act of malice or intentional tort exception to the impact rule, as announced by the Kirksey and Crane cases, to be applicable only where the defendant himself commits the act of malice or intentional tort. This being so, the court concludes that the exception is inapplicable to this case because the act of malice or intentional tort herein was committed by third-party criminal actors. 528 So.2d at 379. The fatal flaw in this analysis is that BRD, through its alleged negligence, is legally responsible for the acts of the third-party criminal actors, just as if BRD's agents had committed the aforesaid criminal intrusion. Plainly, if the nighttime intruders had physically attacked the plaintiff's decedent, all agree that BRD would be legally responsible for that attack; the same result should obtain, in my view, where, as here, the nighttime intruders commit an act of malice or intentional tort, without physical impact, which causes psychic trauma and death to the plaintiff's decedent. In each case, BRD, through its negligence, is legally responsible for the acts of the third-party criminal actors and can take no solace in the fact that it did not personally commit the complained-of *382 criminal acts. Beyond that, the court's analysis is flawed for two other reasons.
First, the precise formulation of the subject exception in the Crane and Kirksey cases does not contain the requirement which the court imposes today. The exception, as formulated, states only that "the facts giving rise to an action in tort for personal injuries are such as to reasonably imply malice ...," Crane, 70 So.2d at 575, and that the facts underlying the tort action brought include a "wrongful act" which "reasonably impl[ies] malice... ." Kirksey, 45 So.2d at 189. There is no stated requirement in Crane, Kirksey, or any other Florida case, that the defendant must personally commit the act of malice or intentional tort  so long as the facts giving rise to the tort action sued upon embrace an act of malice or an intentional tort for which the defendant is legally responsible. The instant wrongful death action fully meets this test.
Second, the underlying rationale for the act of malice or intentional tort exception to the impact rule does not demand, in my view, that the defendant personally commit the act of malice or intentional tort. As I see it, it demands only (1) that an act of malice or intentional tort be committed which causes psychic trauma to the plaintiff, and (2) that the defendant be legally responsible for that act. The stated rationale for the exception is that psychic trauma caused by acts of malice or intentional tort "is not only the natural and probable consequence of the character of the wrong committed, but indeed is frequently the only injurious consequence to follow from it." Kirksey v. Jernigan, 45 So.2d at 189. What gives credibility to such a claim, then, is not that the defendant personally committed the act of malice or intentional tort; it is, instead, that an act of malice or intentional tort was, in fact, committed which foreseeably and understandably caused psychic trauma to the plaintiff for which the defendant is legally responsible. It therefore follows that the entry of the summary judgment for the defendant BRD based on the impact doctrine was entirely inappropriate.
I would reverse.
NOTES
[1] Joanna Sguros also appeals the order of the trial court denying her motion for rehearing.
[2] In opposition to BRD's motion for summary final judgment on this ground, Joanna Sguros argued that the impact doctrine did not bar this action.
[3] The trial court also found that BRD's act or omission in furnishing security was not the proximate cause of Peter Sguros's death and that his death was not reasonably foreseeable.
[1] There is an affidavit in the record from a board-certified pathologist which states that it was medically foreseeable that the plaintiff's decedent might very well have a heart attack as a result of the stress and anxiety involved in the attempted theft of his vessel in this case. The plaintiff presented this affidavit to the trial court in support of her motion for rehearing below.