**Edmund J. BODINE, Jr., Plaintiff–Appellee,**

v.

**FEDERAL KEMPER LIFE ASSURANCE COMPANY, Defendant–Appellant.**

No. 89–3481.

United States Court of Appeals, Eleventh Circuit.

Sept. 26, 1990.

Charles W. Pittman and Ted R. Manry, III, MacFarlane, Ferguson, Allison & Kelly, Tampa, Fla., for defendant-appellant.

Peter W. Martin, Martin & Bomar, P.C., Sarasota, Fla. and Mark R. Wolfe, Tampa, Fla., for plaintiff-appellee.

Before HATCHETT and ANDERSON, Circuit Judges, and DYER, Senior Circuit Judge.

ANDERSON, Circuit Judge.

Edmund Bodine sued Federal Kemper Life Assurance Company ("Kemper") in federal district court under that court's diversity jurisdiction. The claim upon which relief was granted is known as a *Lopez* claim. In *Life Ins. Co. of Georgia v. Lopez*, 443 So.2d 947 (Fla.1983), the Florida Supreme Court recognized the tort of negligent failure to cancel an insurance policy where the beneficiary attempts to murder the insured to collect the policy benefits and where the insurer has actual notice of the murder plot.

In this case, the FBI uncovered a plot to murder Bodine. Initially, no one was certain who was arranging Bodine's death. However, it was discovered that William Stroup, one of Bodine's partners, was behind the plot to murder Bodine so that his company, Cayman Films, Ltd., would collect on the $2,000,000 key man life insurance policy which Kemper had issued on Bodine's life. Philip Yordan, another partner whose life was also in danger, and Bodine called Kemper on November 7, 1983, and demanded that Kemper cancel the insurance policies on both of their lives. There was evidence from which the jury could have reasonably found that by early November 1983, Kemper had actual notice of facts sufficient to trigger its duty under *Lopez*. Kemper had been notified of the murder plot against Bodine and of the fact that the insurance was a likely motive. By that time, Kemper either had received verification of this from appropriate law enforcement personnel or could have upon appropriate investigation. Nevertheless, Kemper did virtually nothing from November 11 until December 6, 1983. On that date, Bodine's newly-hired attorney made

another demand that Kemper cancel the policy on Bodine's life. On December 7, 1983, under the direct orders of Kemper's president, Kemper cancelled the policy. Bodine's attorney was notified of the cancellation; however, Bodine had gone into hiding and did not learn that the policy had been cancelled until February 28, 1984.[1]

The only issue that went to trial before the jury was Bodine's *Lopez* claim. The jury found that Kemper was negligent with respect to the request to cancel the insurance policy. The jury found total damages as follows: $75,000 lost earnings; $2,000 out-of-pocket expenses; and $2,000,000 pain and suffering. The jury found that the total damages were proximately caused in the following percentages: 75% by Kemper and 25% by Bodine. Kemper appealed. We affirm in all respects except for the award of damages for pain and suffering, with respect to which we order a remittitur. Although Kemper raises numerous issues on appeal, only three warrant discussion.[2]

## I. PRECLUSION OF DAMAGES FOR EMOTIONAL DISTRESS

■ Kemper argues that damages for pain and suffering or emotional distress were precluded in this case because of a pretrial ruling on January 23, 1989, by Judge Kovachevich granting partial summary judgment in favor of Kemper. Bodine's complaint had alleged not only the *Lopez* claim, but also other claims, including a claim for negligent infliction of emotional distress. In her January 1989 opinion, Judge Kovachevich granted partial summary judgment, dismissing Bodine's claim for negligent infliction of emotional distress, because Bodine had failed to demonstrate a genuine issue of fact either as to physical impact or significant discernible

physical injury resulting from psychic trauma.[3] Kemper argues on appeal that Judge Kovachevich's ruling that there was no genuine issue of fact as to significant discernible physical injuries should apply both to Bodine's negligent infliction of emotional distress claim and also to his *Lopez* claim. Following Judge Kovachevich's January 1989 order, the case was assigned for trial to Judge Newcomer. Kemper filed a motion in limine presenting this issue to Judge Newcomer. On March 7, 1989, Judge Newcomer filed an opinion rejecting this argument, finding that Judge Kovachevich's January 1989 order granted summary judgment only on the negligent infliction of emotional distress claim, and thus did not foreclose Bodine's *Lopez* claim or his proof of damages resulting from the *Lopez* violation (i.e., psychic trauma which manifested itself in significant discernible physical injuries). On appeal, Kemper urges us to hold that the district court erred in failing to interpret the January 1989 summary judgment order as foreclosing this claim for damages under *Lopez*.

Although the district court's January 1989 order is not as clear as we might hope, we conclude that the district court did not err in its interpretation. The January 1989 order grants summary judgment on the claim for negligent infliction of emotional distress, but the same order clearly retains the *Lopez* claim. The district court's interpretation of its previous order is not unreasonable. We find further support for this conclusion in the fact that Kemper's motion for summary judgment, on which the court was ruling in its January 1989 order, did not request summary judgment on the issue of whether Bodine could recover damages for emotional distress under his *Lopez* claim. Not having done so, it is understandable that Judge Kovachevich would not grant summary judgment on that issue. Fed.R.Civ.P. 56(c).

1. Bodine gave Kemper his parents' address and requested that Kemper inform them upon cancellation of the policy; however, Kemper did not send the notification of cancellation to the requested location. Had Kemper done so, Bodine would have received the notification because Bodine contacted his parents twice daily during the relevant time frame.

2. Kemper's other claims of error have no merit and warrant no discussion.

3. The distinction between the physical impact doctrine and the significant discernible physical injury rule is discussed in Part II of this opinion.

We also note that the January 1989 partial summary judgment, dismissing some but not all of the claims, was an interlocutory order, and thus was subject to revision by the district court. *United States v. Koenig*, 290 F.2d 166 (5th Cir.1961) (whether to reconsider a previous interlocutory order of a different judge is within the sound discretion of the trial judge), *aff'd sub nom. DiBella v. United States*, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962);[4] *see also* 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 56.20[1] (2d ed. 1988) (partial summary judgment is interlocutory in character and is subject to revision by the trial court).

Thus, we reject Kemper's argument that Bodine was precluded by the January 1989 order from seeking damages for emotional distress resulting from the alleged *Lopez* violation.[5]

## II. IMPACT DOCTRINE VERSUS SIGNIFI-CANT DISCERNIBLE PHYSICAL INJURIES RULE

■ Kemper also argues that Bodine's *Lopez* claim is barred in this case by Florida's physical impact doctrine. As a general rule, Florida law precludes recovery for emotional distress injuries caused by a defendant's negligence in the absence of physical impact to the claimant. *Gilliam v. Stewart*, 291 So.2d 593 (Fla.1974). In this case, Kemper argues that Bodine suffered no physical impact, either from Kemper itself or from the suspected murder plot. Thus, Kemper urges that the district court should have granted its motion for directed verdict and for judgment notwithstanding the verdict. The Supreme Court of Florida has carved out some exceptions to the physical impact doctrine. For example, in *Champion v. Gray*, 478 So.2d 17 (Fla.1985), the court addressed the "unusual and nontraditional cause of action in allowing damages caused by psychic injury following an injury to another." *Id.* at 20. There, a drunken driver ran off the road and killed Karen Champion. Karen's mother heard the impact, came immediately to the scene, saw her daughter's body, and was so overcome with shock and grief that she collapsed and died on the spot. *Id.* at 18. The mother's estate sued the driver for damages to, and the wrongful death of, the mother. The supreme court rejected the application of the Florida rule requiring that a plaintiff must suffer a physical impact before recovering for emotional distress caused by the negligence of another. Instead, the court held "that a claim exists for damages flowing from a significant discernible physical injury when such injury is caused by psychic trauma resulting from negligent injury imposed on another who, because of his relationship to the injured party and his involvement in the event causing the injury, is foreseeably injured." *Id.* at 20.

■ The Florida courts have never addressed the issue of which rule applies to a *Lopez* claim, the physical impact rule or the significant discernible physical injuries rule. The district court opined that, when faced with the issue, the Florida Supreme Court would apply the significant discernible physical injuries rule. We agree with the district court's conclusion and adopt the following portion of its reasoning:

> [T]he "impact rule" is to provide a "threshold indicator" of significant injury so the courts may feel satisfied that an emotional distress-based injury has actually occurred.

The *Champion* Court determined that this "threshold indicator" is not necessary when a "discernible physical injury [is] caused by psychological trauma resulting from a negligent injury imposed

---

**4.** This case was decided prior to the close of business on September 30, 1981, and is binding precedent under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

**5.** Kemper also suggests on appeal that it was surprised and prejudiced by the district court's ruling allowing Bodine to prove damages for emotional distress. We reject that argument.

As noted in the text, the most reasonable reading of the January 1989 order was that it did not preclude such damages, thus, any reliance by Kemper on that order was unreasonable. Moreover, Kemper was on ample notice before trial that Bodine was asserting such damages. Finally, Kemper never sought a continuance on this ground from the district court.

upon a close family member within the sensory perception of the physically injured person, [because this] is too great a harm to require direct physical contact ..." *Id.* at 18. The Court did note, however, that there is still the requirement that the plaintiff suffer a "causally connected clearly discernible physical impairment [which] must accompany or occur within a short time of the psychic injury." *Id.*

The Supreme Court was aware that it had created a new tort in its affirmance of the lower court *Lopez* decision. *Lopez*, 443 So.2d at 949. It is a negligence cause of action unlike all others. The insurance company, in the proper circumstances is held to have a duty to act to deter the death threat:

> Such ... circumstances must surely impose on the insurance company a duty to eliminate any motive for effecting the insured's death if not by withdrawing the coverage ... then at least by warning the beneficiary that no proceeds would be payable if she in fact murdered the insured. Knowledge that the insurance company was aware of the plot and would scrutinize the insured's "accidental" death would *surely serve as a deterrent* to the accomplishment of the evil purpose. *Id.* [emphasis added].

Logically, the "impact" which is likely is not caused by the tortfeasor under the new *Lopez* tort. The only impact which is possible is, as in *Lopez*, where the death threat is actually carried out or is in the process of being carried out. The impact is not created by the actions of the defendant insurance company, but rather flows indirectly from the failure to cancel the policy thus leaving reason for the murder, the insurance benefits, as a viable option for the murderers to pursue. The possible impact is one over which defendant has little direct control; it is, rather, an event almost entirely in the hands of a third party, save for defendant's duty to act to deter the event.

I conclude that the Florida Supreme Court would not find that the "impact rule" would create any principled "threshold" of injury that would separate meritorious claims from those which are not meritorious. The doctrinal trend in Florida, as evidenced by the Supreme Court's decision in *Champion*, is to a relaxation of the "impact rule" in situations where the rule creates an arbitrary bar to those who should be compensated for emotional distress-related injury. It is clear from *Lopez* that the Florida Supreme Court believes that those injured by the negligence of the insurance companies in cases such as this one should be compensated. As in the scenario in *Champion*, the Court believes that the harm is "too great to require direct physical contact." There may be no emotional distress greater than the fear that one's life is constantly in danger from an unknown assailant. Therefore I conclude that the application of the "impact rule" would create the type of unprincipled threshold which the Supreme Court sought to avoid in *Champion*, and would nearly eradicate the recovery under the cause of action it purposefully created.

R 4–144 at 5–7.

This conclusion is also supported by several other considerations. The Florida Supreme Court opinion in *Lopez* placed a clear duty on an insurance company with actual notice of the policy beneficiary's murderous intentions toward the insured to investigate and eliminate the motive for the murder, either by cancelling the policy or by warning the beneficiary that no proceeds would be payable if the beneficiary murdered the insured. Although there was physical impact in *Lopez* in the sense that the threatened murder was actually attempted, nothing in the opinion suggests that there was a *sine qua non* of the cause of action. Moreover, it is obvious that in most *Lopez* situations the threatened murder will be intercepted by law enforcement action so that no physical impact will occur; yet, nothing in the *Lopez* opinion suggests

that the cause of action will exist only in those rare situations where the murder is actually attempted such that there is a physical impact on the insured.[6]

Another factor supporting our conclusion is that the strict prerequisites for a *Lopez* claim greatly reduce the risk of fraudulent claims, thus satisfying the *raison d'être* for the impact rule. A *Lopez* claim arises only where the insurance company receives actual notice of intent on the part of a policy beneficiary to murder the insured. It is unlikely that an insured would manufacture such a claim and give the required notice to the insurance company because the police investigation which would naturally ensue would almost surely uncover the scheme and subject the insured to severe consequences. Moreover, in the event of an actual murder scheme of the *Lopez* type, the likelihood of fraudulent claims of psychic trauma is mitigated by the fact that emotional distress is very reasonable under such circumstances. In a similar circumstance, the Florida Supreme Court has held that it is sufficient if the psychic trauma manifests itself in significant dis-

cernible physical injuries. *Champion v. Gray*, 478 So.2d 17 (Fla.1985).[7]

For the foregoing reasons, we conclude that the district court appropriately held that the Florida Supreme Court would apply the significant discernible physical injuries rule [8] to a *Lopez* claim.

## III. REMITTITUR WITH RESPECT TO PAIN AND SUFFERING DAMAGES

■ Kemper argues that the verdict in the amount of $2,000,000 for pain and suffering was so excessive as to require a remittitur. Kemper argues that the insurance policy was actually cancelled on December 8, 1983, approximately one month after Kemper received notice of the murder plot, and that Bodine was aware that the policy had been cancelled by February 28, 1984.[9] Kemper also argues that much of Bodine's anxiety was necessarily caused by the murder plot itself, rather than by Kemper's alleged negligence in failing to cancel the policy.

We have carefully reviewed the record in this regard. Applying the principles estab-

---

6. The *Lopez* claim is similar to the claim allowed in *Champion v. Gray, supra,* in that both are nontraditional causes of action and both involve a great likelihood that the impact rule would rarely be satisfied.

7. Kemper's reliance on *Sguros v. Biscayne Recreational Dev. Co.,* 528 So.2d 376 (Fla.App. 3 Dist.1987), *rev. denied,* 525 So.2d 880 (Fla.1988), is misplaced. There Mr. and Mrs. Sguros lived aboard a sailboat which was docked at a marina managed by the defendant. In the middle of the night the boat was boarded by intruders who started the engine, while Mr. and Mrs. Sguros were asleep below. Mr. Sguros awakened and attempted to turn off the engine below by cutting the fuel line. However, he was stricken by a heart attack and died. Suit was filed against defendant for wrongful death of Mr. Sguros, alleging negligence in failing to provide adequate security. The court held that the claim was barred because of the absence of any physical impact upon Mr. Sguros. *Sguros* is distinguishable from the instant case in several respects. First, *Sguros* involved an ordinary claim for negligent infliction of emotional distress. Unlike *Sguros,* the instant claim is a narrowly defined, non-traditional cause of action with specific prerequisites which, as discussed in the text above, provide protection against the concerns underlying the physical

impact rule. We conclude that the instant case is much more similar to *Champion v. Gray, supra,* which was also a narrowly-defined, non-traditional cause of action, the definition of which provided protection against the concerns underlying the impact doctrine. The *Champion* cause of action is limited to a plaintiff with a close family relationship to the person directly impacted and injured and is further limited by requiring that the plaintiff be directly involved (i.e., sees the accident or hears it or arrives upon the scene while the injured party is still there). 478 So.2d at 20. Like the requirements of the *Lopez* claim, those limitations protect against fraudulent claims of psychic trauma because emotional distress is very reasonable under those circumstances.

8. Kemper also asserts that there was not sufficient evidence in this case of significant discernible physical injuries to satisfy the rule. We have carefully reviewed the record, and we conclude that there is sufficient evidence to satisfy the significant discernible physical injuries rule.

9. Although Bodine's attorney apparently received a copy of the cancellation letter shortly after December 8, 1983, Bodine testified that he was in hiding and did not receive notice until February 28, 1984.

lished in *Glazer v. Glazer*, 278 F.Supp. 476 (E.D.La.1968), adopted as the applicable law in *Gorsalitz v. Olin Mathieson Chemical Corp.*, 429 F.2d 1033 (5th Cir.1970), we conclude that the maximum damages for pain and suffering which the jury could have found on the evidence in this case was $1,000,000. Thus, we order a remittitur of the total damages for pain and suffering in excess of $1,000,000.[10] If, on remand, Bodine declines to accept the remittitur, then there shall be a new trial on the sole issue of total damages for pain and suffering.[11]

## IV. CONCLUSION

The judgment of the district court is affirmed in all respects except for the award of damages for pain and suffering, and the case is remanded to the district court with instructions to order a remittitur of the damages for pain and suffering so that the total damages for pain and suffering (as thus remitted and before reduction for comparative negligence) shall be $1,000,000. If, on remand, Bodine declines to accept the remittitur, then the district court is instructed to order a new trial on the sole issue of the total damages for pain and suffering.

AFFIRMED in part, VACATED in part, and REMANDED with instructions.

---

10. Of course, this figure will have to be reduced by the 25% comparative negligence which the jury found on the part of Bodine.

11. The issue of the total damages for pain and suffering is sufficiently distinct and separate from the other issues in the case to warrant a new trial on that issue alone. Thus, no new trial is to take place on the other issues, including the findings of liability and comparative negligence, and including the findings of $75,000 lost earnings and $2,000 out-of-pocket expenses.