PER CURIAM.
Appellant filed a suit against the appel-lee insurance company for declaratory judgment to determine the rights of the parties under an application which the appellant Flynn made for an insurance policy on the life of one Herbert E. McKnight. Summary judgment was entered holding the defendant insurer was not liable, and the plaintiff appealed.
An agreement was entered into between PerKup Services of Miami, Inc., and National Break-Time Services, Inc., under which National was granting a franchise and supplying certain machines to PerKup and to which agreement Flynn was a party. Therein National acknowledged receipt of $10,000 as a security deposit made by PerKup (in place of other security requirements thereby waived by National) on 200 coffee brewing machines which were to be delivered by National to PerKup incident to the franchise.
The contract contained provision for the security deposit (if it was not applied for default of PerKup) to be returned (1) if National failed to perform, or (2) upon termination of the franchise agreement between National and PerKup, or (3) in event of sale by PerKup of its franchise rights. It was recited that the $10,000 paid by PerKup as a security deposit had been loaned to PerKup by Flynn, and agreed that upon the. security deposit becoming returnable it would be paid over to Flynn, and not paid to PerKup without Flynn’s written consent.
Based on the fact of his $10,000 loan to PerKup, Flynn obtained a $20,000 insurance policy on the life of David Arce, the president of PerKup. Flynn also applied for a $20,000 policy on the life of Herbert McKnight, the president of National. The agent of the appellee insurance company through whom the latter policy was applied for, submitted the insurance application form to McKnight who answered the questions which were propounded thereon, and McKnight submitted to a physical examination by the insurer’s doctor. Flynn made a premium payment or deposit to the insurer’s agent, who issued a binder receipt, which under its terms was to be effective upon completion of the application and medical examination of the prospective insured (McKnight), and which by its terms would then remain in effect for a period not to exceed 60 days.
It appeared that McKnight, in one part of the application, gave a negative answer to a question relating to his cardiac health condition, and in another part of the application revealed he had consulted a doctor for chest pains. The doctor he consulted gave him an electrocardiogram, but testified by deposition that he found that McKnight had not had a heart attack, and that the ECG was not taken for or because of McKnight’s prior chest pains. The insurer, on considering the application, obtained the ECG from McKnight’s doctor. The *88 insurer found the ECG indicative of something questionable, but that it was inconclusive, and requested that its own medical examiner make and submit another ECG of McKnight.
Before that was done, McKnight became the victim of an assault in which he suffered a gunshot injury to his head, which prevented the taking of a further satisfactory ECG. On the ground that it was unable to satisfy itself as to the insurability of McKnight, the insurer thereupon gave notice of rejection of the application. Subsequently McKnight died as a result of the injury above mentioned. His death took place more than sixty days after the binder receipt became effective, if indeed it was effective.
McKnight was not personally obligated to Flynn in any respect. National (of which McKnight was the president) was not obligated to Flynn for repayment of the loan made to PerKup. National’s obligation was a conditional one, to return the PerKup security deposit, if and when it became returnable under the terms of the contract. The provision for the security deposit, when and if it became returnable, to be delivered by National to Flynn rather than to PerKup, necessarily was based on PerKup’s consent thereto, expressed in the contract. There was no present obligation by National to Flynn, and no certainty that one would arise later. In the circumstances presented, we find merit in the contention of the appellee that the indirect and conditional obligation of National was not adequate to create an insurable interest necessary to support issuance to Flynn of a life insurance policy on National’s president, McKnight. See 18 Fla.Jur., Insurance § 128, § 136. Having so concluded, we find it unnecessary to decide the additional question of whether it was shown there was a false answer by McKnight to a material question such as to justify rejection of the application after McKnight had received the injury which subsequently proved to be fatal.
Affirmed.