443 So.2d 947 (1983)
LIFE INSURANCE COMPANY OF GEORGIA, Petitioner,
v.
Jim F. LOPEZ, Respondent.
No. 61558.
Supreme Court of Florida.
December 8, 1983.
Rehearing Denied February 13, 1984.
Marjorie Gadarian Graham, of Jones & Foster, West Palm Beach, for petitioner.
Tomberg & Tomberg, Boynton Beach, and Thomas A. Hoadley of Hoadley & Gavigan, West Palm Beach, for respondent.
EHRLICH, Justice.
This cause is before the Court for consideration of a question certified to us as being of great public importance. Lopez v. Life Insurance Company of Georgia, 406 So.2d 1155 (Fla. 4th DCA 1981). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
*948 In 1980, Jim Lopez filed suit against Life Insurance Company of Georgia, claiming the company's negligence had endangered his life and caused him injury. In the complaint, Lopez alleged that his total family income amounted to $9,000 per year. Nonetheless, he alleged, the insurance company issued to Lopez's wife insurance coverage on his life with a total face value of $130,000 and $260,000 for accidental death. The annual premiums, paid out of family income, were $7,464. Lopez further alleged that he was not aware that his wife was purchasing life insurance; he claimed to have been tricked into signing the forms, believing his wife was purchasing a health insurance policy.
The complaint stated that in early 1977, Lopez overheard his wife and her brother plotting to kill him. Lopez allegedly called his insurance agent immediately, informing him of the conspiracy, but the insurance company made no inquiry into the matter. In May 1977 Lopez's wife and brother-in-law abducted him, it was alleged, and were attempting to drown him when a deputy sheriff happened upon the scene and rescued him. The complaint charged the insurance company with negligence in failing to discover the disproportion of the coverage to the family's financial circumstances and negligence in failing to investigate the conspiracy to murder Lopez after receiving actual notice.
The trial court dismissed Lopez's complaint, with prejudice, for failure to state a cause of action. The district court reversed the order dismissing the complaint and remanded the cause to the trial court. On consideration of petition for rehearing, the district court certified the following as a question of great public importance:
Whether an insurer issuing a life insurance policy can be liable in tort to the insured where the policy beneficiary attempts to murder the insured in order to collect the policy benefits?
406 So.2d at 1160.
We find the language of this question to be overbroad in relation to the facts of the case before us and so restrict the issue:
Whether an insurer issuing an insurance policy can be liable in tort to the insured where the policy beneficiary attempts to murder the insured in order to collect the policy benefits and where the insurer had actual notice of the policy beneficiary's murderous intent.

We answer the question as rephrased in the affirmative and approve the decision of the district court.
As the district court noted, and as the parties to the appeal concede, there exists no statutory or case law directly addressing the issue presented. Florida law prohibits issuance of an insurance policy to one who has no insurable interest in the thing insured. § 627.404, Fla. Stat. (1981).
Only two states have recognized a cause of action against an insurance company whose negligence in issuing a policy allegedly exposed the insured to danger from the beneficiary of the policy. In Liberty National Life Insurance Co. v. Weldon, 267 Ala. 171, 100 So.2d 696 (1957), the Alabama Supreme Court recognized a cause of action against an insurance company which had issued policies on a child's life to the child's aunt by marriage. The finding of liability there was predicated on the aunt's lack of an insurable interest. The court recognized the insurance company's duty to exercise reasonable care not to issue a life insurance policy to one without an insurable interest in that life, reasoning that where the benefits of the policy are not counterbalanced by a benefit flowing from the life itself, the policy holder is "wagering" to profit from the death of the insured.
The issue of consent to purchase life insurance by and for the benefit of one other than the insured was addressed in South Carolina. Ramey v. Carolina Life Insurance Co., 244 S.C. 16, 135 S.E.2d 362 (1964). There a husband was allowed to sue the company which issued an insurance policy on his life because he alleged that the company had actual knowledge that his signature on the consent form was forged. *949 The court ruled that the public policy prohibiting issuance of life insurance policies without the knowledge and consent of the insured applied even when the purchaser of the policy had a recognized insurable interest. Issuance of the policy in the face of actual knowledge that the signature on the consent form was forged was held to violate a duty of care and to create a situation conducive to illegal attempts on the life of the insured.
Neither case is directly applicable to the facts before us. Mrs. Lopez clearly had an insurable interest in Mr. Lopez's life. The allegation that Mr. Lopez's signature on the forms was obtained by trickery is not legally analogous to the allegation of actual knowledge of forgery in the Ramey case. The case before us is unique and must be decided narrowly on its facts.
Insurance companies cannot in the usual course of business dealings be held to be guarantors of their customers' good intentions. Neither can they be relieved of a duty to investigate when a beneficiary's criminal motive in purchasing the policy is made known.
The pivotal issue in this case is the allegation that the insurance company had actual notice of the policy beneficiary's murderous intentions toward the insured. This notice should have triggered an investigation which would in its earliest stages have uncovered the disproportion between the insured's economic worth to the beneficiary dead and alive, the insured's lack of consent to the issuance of the policy, and the financial impossibility of the couple meeting the premium payments for any extended period of time. Such an aggregation of suspicious circumstances must surely impose on the insurance company a duty to eliminate any motive for effecting the insured's death, if not by withdrawing the coverage as void for reasons of public policy, then at least by warning the beneficiary that no proceeds would be payable if she in fact murdered the insured. Knowledge that the insurance company was aware of the plot and would scrutinize the insured's "accidental" death would surely serve as a deterrent to the accomplishment of the evil purpose.
To absolve the insurance company from any responsibility in the face of actual notice allows the company to continue to collect a premium with the high probability of being able to avoid any payment on the policy. This, in effect, allows the company to "make book" that murder will ensue, and the company will therefore benefit. Such a holding is unconscionable and an insult to the insurance industry.
We emphasize the procedural posture of this case: The trial court dismissed the complaint with prejudice. In reviewing such action, we must assume as true all allegations well plead in the complaint. Actual notice, the disproportionate coverage, the insured's lack of consent and the amount of the annual payment were all alleged in the complaint. There has been no finding of fact. We therefore approve the district court of appeal and remand the cause to the trial court for further proceedings.
It is so ordered.
ALDERMAN, C.J., and ADKINS, OVERTON and McDONALD, JJ., concur.
BOYD, J., dissents with an opinion.
BOYD, Justice, dissenting.
The Court today creates a new cause of action not previously recognized under the law of Florida. All facets of the insurance industry, including the legal rights and obligations of parties to insurance contracts, are the subject of pervasive regulation under our state's statutes. The Florida Insurance Code comprises chapters 624 through 632, Florida Statutes (1981). Since the legislature has involved itself so thoroughly in the regulation of the field, the lack of a statute creating the liability which the Court now recognizes should be deemed to indicate a legislative judgment against recognizing such a cause of action. Examination of specific statutes supports this view as the following discussion will show.
*950 Respondent's complaint alleged that his wife had contracted with Life of Georgia for several policies on his life and that the policies were obtained without his consent or knowledge in that he signed the applications thinking they pertained to health insurance. He alleged that the policies were obtained "between the years 1974 and 1977."[1] The complaint alleged that the Lopez family income was about $9,000 per year and the net worth was zero. The premiums on the policies came to a total of $622.00 monthly.[2] The complaint alleged that when respondent learned of the alleged plot against his life, "he immediately called his insurance agent," reported the conspiracy and asked that any policies on his life be cancelled. Respondent concluded that the insurer's failure to cancel the policies or investigate his report proximately cause his damages incurred in the alleged attempt on his life.
The present situation is readily distinguishable from the only cases from any American jurisdictions that have recognized insurer liability for endangering the life of an insured through negligence. In Liberty National Life Insurance v. Weldon, 267 Ala. 171, 100 So.2d 696 (1957), liability was imposed for negligently contributing to the wrongful death of the insured predicated on the issuance of a policy to an applicant-beneficiary with no insurable interest in the life of the insured. In Ramey v. Carolina Life Insurance Co., 244 S.C. 16, 135 S.E.2d 362 (1964), it was held wrongful as a matter of public policy for an insurer to issue a policy of life insurance without the knowledge of the insured. It was alleged there that the insured's signature was forged on the application and that the insurer knew it was forged.
Unlike Weldon, in the present case there clearly was an insurable interest because of the relation of husband and wife. See 43 Am.Jur.2d Insurance §§ 503, 505 (1969). Unlike Ramey, here there was no allegation that the insurer knew or should have known at the time the policies were issued that the insured did not consent to or have knowledge of the policies.
The district court held that the marital relationship was inadequate to establish insurable interest in view of the disproportion between the coverage and Lopez' income. The court also emphasized Lopez' lack of consent based on his allegation of his wife's trickery.
In Florida, public policy demands that the beneficiary of an insurance policy covering either life or property have an insurable interest in the life or property insured. In the absence of an insurable interest, the law condemns such policies as mere wagering contracts. Meerdink v. American Insurance Co., 137 Fla. 587, 188 So. 764 (1939); Knott v. State ex rel. Guaranty Income Life Insurance Co., 136 Fla. 184, 186 So. 788 (1939); National Benefit Life Insurance Co. v. Brown, 103 Fla. 758, 139 So. 193 (1931); Airvac, Inc. v. Ranger Insurance Co., 266 So.2d 178 (Fla. 4th DCA 1972); Aetna Insurance Co. v. King, 265 So.2d 716 (Fla. 1st DCA 1972); Flynn v. Prudential Insurance Co. of America, 223 So.2d 86 (Fla. 3d DCA 1969); Peninsular Fire Insurance Co. v. Fowler, 166 So.2d 206 (Fla. 2d DCA 1964). It does not follow, however, that the issuance of a life insurance policy without inquiry into the nature and extent of the beneficiary's interest in the insured creates a tort cause of action in favor of the insured.
Section 627.404, Florida Statutes (1979), provides:
An insurer shall be entitled to rely upon all statements, declarations and representations made by an applicant for insurance relative to the insurable interest which such applicant has in the insured; and no insurer shall incur any *951 legal liability except as set forth in the policy, by virtue of any untrue statements, declarations or representations so relied upon in good faith by the insurer.
Thus the public policy of Florida, as expressed in a statute directly pertaining to the doctrine of insurable interest, specifically negates any duty of inquiry into the actual insurable interest of an applicant-beneficiary.
Section 627.405, Florida Statutes (1979), by its terms only applies to property insurance but provides a definition of the concept of insurable interest:
(1) No contract of insurance of property or of any interest in property or arising from property shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured as at the time of the loss.
(2) "Insurable interest" as used in this section means any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment.
(3) The measure of an insurable interest in property is the extent to which the insured might be damnified by loss, injury, or impairment thereof.
Many jurisdictions recognize a general rule that a policy of life insurance taken out without the consent or knowledge of the person whose life is insured is against public policy and unenforceable. 43 Am.Jur.2d Insurance § 242 (1969); 44 C.J.S. Insurance § 241 (1945). However, respondent has cited no Florida decisional or statutory law establishing such a rule. Indeed, the Florida Insurance Code seems to indicate that there is no such requirement. Section 627.631, Florida Statutes (1979), provides:
The word "Insured," as used in this chapter, shall not be construed as preventing a person other than the insured with a proper insurable interest from making application for and owning a policy covering the insured or from being entitled under such a policy to any indemnities, benefits, and rights provided therein.[3]
Furthermore, in many jurisdictions the rule that the person whose life is insured must consent to the issuance of the policy is held to be based on insurance companies' own application requirements. Thus the rule exists for the benefit and protection of insurers and may be waived. An insurer who treats an insurance application as sufficient may be held to have waived the requirement that the insured sign the application. See, e.g., Crump v. Northwestern National Life Insurance Co., 236 Cal. App.2d 149, 45 Cal. Rptr. 814 (Cal.Ct.App. 1965); Mailhoit v. Metropolitan Life Insurance Co., 87 Me. 374, 32 A. 989 (1895); Fisher v. Metropolitan Life Insurance Co., 160 Mass. 386, 35 N.E. 849 (1894); Fulton v. Metropolitan Life Insurance Co., 4 Misc. 76, 23 N.Y.S. 598 (Sup.Ct. 1893); Henry v. Lincoln Income Life Insurance Co., 405 S.W.2d 167 (Tex.Civ.App. 1966). Whatever may be the rights and remedies as between the applicant and the insurer, the failure of an insurer to insist upon compliance with such a condition surely creates no right of redress in favor of the person whose life is insured.
The majority opinion emphasizes the fact that if Lopez' wife had succeeded in killing him, the insurance company could have refused to pay her the policy benefits on the ground that she had murdered the insured. However, unless the policy were found to be void ab initio due to Mrs. Lopez' fraudulent intent at the time she applied for and was issued the policies, the insurer would not be relieved of the duty of paying the death benefits, but would be obliged to pay them to contingent beneficiaries or the estate of the insured. New England Mutual Life Insurance Co. v. Null, 554 F.2d 896 (8th Cir.1977); Carter v. Carter, 88 So.2d 153 (Fla. 1956). The complaint contains no *952 allegation that respondent's wife was already planning the murder and fraud at the time she applied for and obtained the policies.
Even if it be conceded that the insurer here violated some duty of reasonable care, either by failing to investigate the insurable interest of the beneficiary or by failing to cancel the policy at the request of the person whose life was insured, I believe the complaint was properly dismissed because it failed to sufficiently allege that the asserted violation was the proximate cause of respondent's damages. While the complaint does contain a conclusory assertion of proximate cause, it does not appear from the complaint what action by the insurer would have been effective to prevent the criminal attack that is alleged to have taken place. Thus while the complaint alleges that the risk was foreseeable, it does not contain a sufficient allegation of causation in fact. See Loftin v. Wilson, 67 So.2d 185 (Fla. 1953). If respondent had wanted someone to prevent a threatened attempt on his life, he should have notified and sought the protection of law enforcement authorities.
The majority opinion, in holding that the insurer had a duty to investigate, places a tremendous burden on life insurers. They will now be required to launch investigations upon receipt of unsubstantiated reports from their insureds and perhaps also from disinterested and even anonymous persons. Such investigations, by their very nature, pose a danger to insurance companies in that they may become subject to accusations of invasion of privacy and slander. Moreover, if the investigation turns up inaccurate information, the insurer may be led to wrongfully cancel a policy that should be kept in force.
For the foregoing reasons I conclude that the district court erred in reversing the judgment and would answer the certified question in the negative.
NOTES
[1] Thus, contrary to an implication in the majority opinion, there was no specific allegation that the policies had only been in effect a very short time when the alleged murder attempt took place.
[2] Contrary to what the majority finds, there was no allegation that the monthly premiums were actually paid from Mr. Lopez's earnings of about $750.00 per month.
[3] Subsequent to the events giving rise to this case, the legislature amended section 627.631 to apply only to Part VI of chapter 627, dealing with disability insurance policies. Ch. 81-243, § 481, Laws of Fla. (1981).