543 So.2d 785 (1989)
S.M. FISCHER, A.M. Fischer, Appellants,
v.
G.W. METCALF, M.D., Appellee.
No. 86-1366.
District Court of Appeal of Florida, Third District.
April 18, 1989.
*786 David W. Verizzo, Miami, for appellants.
Lee, Schulte, Murphy & Coe, Coral Gables, for appellee.
Before SCHWARTZ, C.J., and BARKDULL, HUBBART, NESBITT, BASKIN, FERGUSON and JORGENSON, JJ.

ON REHEARING EN BANC
JORGENSON, Judge.
The defendant, Dr. George W. Metcalf, filed a motion for rehearing of the opinion of this court. The panel opinion reversed the trial court's order of dismissal. This court, on its own motion, granted rehearing en banc pursuant to Florida Rule of Appellate Procedure 9.331(c) on the ground that the case is of exceptional importance. We requested supplemental briefs from the parties on whether Rosenberg v. Ryder Leasing, Inc., 168 So.2d 678 (Fla. 3d DCA 1964), should be overruled. The panel opinion filed in this case on December 15, 1987, is withdrawn, and the following opinion is substituted in lieu thereof.
The minor daughters of G.R. Fischer, by and through their mother and next friend, brought an action against their father and his psychiatrist, Dr. George W. Metcalf. The children alleged, inter alia, that Dr. Metcalf knew or should have known that his patient, G.R. Fischer, physically and mentally abused his daughters; that Dr. Metcalf, in violation of the child abuse reporting provisions of section 827.07(3), Florida Statutes (1979), failed to report his knowledge to the Department of *787 Health and Rehabilitative Services (HRS); and that, as a result of this omission, the children suffered physical and emotional injuries. Dr. Metcalf filed a motion to dismiss for failure to state a cause of action. The trial court, after hearing argument, granted the motion and entered an order of dismissal. One of the minor daughters, S.M. Fischer, appealed. We affirm the trial court's order based upon our holding that Florida's Abuse of Children or Disabled Persons Law, Chapter 827, Florida Statutes, does not provide a private right of action for violation of a statutory duty to report an alleged abuse.[1]
Section 827.07(3) requires that reports of known or suspected child abuse or neglect be referred to the Department of Health and Rehabilitative Services as follows:
(3) Any person, including, but not limited to, any:
(a) Physician, osteopath, medical examiner, chiropractor, nurse, or hospital personnel engaged in the admission, examination, care, or treatment of persons;
(b) Health or mental health professional other than one listed in paragraph (a);
(c) Practitioner who relies solely on spiritual means for healing;
(d) School teacher or other school official or personnel;
(e) Social worker, day care center worker, or other professional child care, *788 foster care, residential, or institutional worker; or
(f) Law enforcement officer, who knows, or has reasonable cause to suspect, that a child is an abused or neglected child shall report such knowledge or suspicion to the department in the manner prescribed in subsection (9).
Section 827.07(18) provides a penalty for failure to report:
(18)(a) Any person required by this section to report known or suspected child abuse or neglect who knowingly and willfully fails to do so, or who knowingly and willfully prevents another person from doing so, is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
Section 827.07 is a penal statute; it "imposes punishment for an offense committed against the state and its term includes all statutes which command or prohibit acts and establishes penalties for their violations to be recovered for the purpose of enforcing obedience to the law and punishing its violation." Dotty v. State, 197 So.2d 315 (Fla. 4th DCA 1967). Laws which are penal in nature are to be strictly construed in favor of the individual against whom a penalty is to be imposed. Id. In construing a criminal statute, "nothing that is not clearly and intelligently described in [a statute's] very words, as well as manifestly intended by the Legislature, is to be considered as included within its terms." Earnest v. State, 351 So.2d 957 (Fla. 1977).
Chapter 827 makes no express provision for civil liability. Our threshold inquiry, therefore, concerns the appropriate test to use in deciding whether a cause of action should be judicially implied. This court previously has followed common-law tradition and set forth a relatively simple test in Rosenberg v. Ryder Leasing, Inc., 168 So.2d 678 (Fla. 3d DCA 1964). Rosenberg provided that, where a penal statute imposes a duty to benefit a class of individuals, a right of action accrues to a class member injured through breach of the duty. Having once ascertained the existence of a special class and plaintiff's membership therein, we reasoned that "the cause of action arises by virtue of the duty created by the statute." Id. at 680. The Rosenberg test comported with the test set out in Texas & Pacific R. v. Rigsby, 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874, 877 (1916). "[W]here a statute enacts or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his advantage, or for the recompense of a wrong done to him contrary to the said law." (Citations omitted.)
More than a half-century after Rigsby was decided, the Supreme Court modified its approach in determining whether a private remedy should be implied in a statute not expressly providing one. As will be seen, infra, we now alter our own approach. In Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Court set forth four criteria that focused on discerning the intent of Congress in enacting the statute under review. Three of the four factors enumerated in Cort are germane in a state court setting. These are:
(1) whether the plaintiff is one of the class for whose especial benefit the statute was enacted;
(2) whether there is any indication, either explicit or implicit, of a legislative intent to create or deny such a remedy;
(3) whether judicial implication is consistent with the underlying purposes of the legislative scheme[.]
422 U.S. at 78, 95 S.Ct. at 2088, 45 L.Ed.2d at 36 (emphasis in the original).[2] Referring to these criteria, the Court observed that increasingly complex federal legislation, coupled with a much higher volume of federal litigation, "strongly supported the desirability of a more careful scrutiny of legislative intent than Rigsby had required." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran, 456 U.S. 353, 377, 102 S.Ct. 1825, 1838, 72 L.Ed.2d 182, 200 (1982). Although not expressly overruled, all that *789 survives of Rigsby is reflected in the first of the Cort factors, that is, the necessity of establishing plaintiff's status as "one of the class for whose especial benefit the statute was enacted."
While Cort and Curran are not binding upon us, the Court's rationale is compelling. Legislation in Florida has become increasingly comprehensive in recent years, and Florida courts bear an evergreater burden of ascertaining legislative intent when it is not otherwise clear. Within this contemporary context, we find the Cort analysis is a more incisive aid in determining legislative intent. Mindful that "[i]t is a fundamental rule of statutory construction that legislative intent is the polestar by which the court must be guided... .," State v. Webb, 398 So.2d 820, 824 (Fla. 1981), we adopt the implication doctrine articulated in Cort. Accordingly, we recede from Rosenberg to the extent that it holds the "class benefited" factor to be the sole determinative in implying a private right of action for violation of a penal statute. Our decision to recede will not undermine prior case law in this district. In our more recent opinions, we have not strictly applied the Rosenberg test but have incorporated the substance of the Cort factors into our analyses. See Bass v. Morgan, Lewis & Bockius, 516 So.2d 1011 (Fla. 3d DCA 1987) (court looked to additional factors of statutory history and intendment of extortion statute to hold no civil cause of action for violation of statute creating crime of extortion), rev. denied, 525 So.2d 876 (Fla. 1988); Lavis Plumbing Servs. v. Johnson, 515 So.2d 296 (Fla. 3d DCA 1987) (court reviewed purpose of statute, subsequent history, and scrutinized legislative intent in determining that law prohibiting impersonation of an officer did not impose duty for benefit of special class and thus did not give rise to cause of action for civil liability); Tourismart of America, Inc. v. Gonzalez, 498 So.2d 469 (Fla. 3d DCA 1986); Perdomo v. Jackson Memorial Hosp., 443 So.2d 298 (Fla. 3d DCA 1983); Roger Rankin Enters., Inc. v. Green, 433 So.2d 1248 (Fla. 3d DCA 1983) (Pearson, J., specially concurring).
In his dissent in Cannon v. University of Chicago, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), Justice Powell noted that in the first four years after the Cort decision no fewer than twenty decisions by the circuit courts had implied private actions from federal statutes. This suggests that application of the Cort doctrine will not  nor should it  operate to close the courthouse doors to litigants seeking private redress for violations of penal statutes. At the same time, there is merit in Justice Powell's criticism that Cort permits the judiciary to assume policymaking authority vested in the legislature, thereby inviting the legislature
to avoid resolution of the often controversial question whether a new regulatory statute should be enforced through private litigation. Rather than confronting the hard political choices involved, Congress is encouraged to shirk its constitutional obligation and leave the issue to the courts to decide. When this happens, the legislative process with its public scrutiny and participation has been bypassed, with attendant prejudice to everyone concerned. Because the courts are free to reach a result different from that which the normal play of political forces would have produced, the intended beneficiaries of the legislation are unable to ensure the full measure of protection their needs may warrant. For the same reason, those subject to the legislative constraints are denied the opportunity to forestall through the political process potentially unnecessary and disruptive litigation. Moreover, the public generally is denied the benefits that are derived from the making of important societal choices through the open debate of the democratic process.
Cannon, 441 U.S. at 743, 99 S.Ct. at 1981, 60 L.Ed.2d at 604 (footnote omitted). Court must strike a balance; neither "fashioning a per se rule of construction that implicit in every penal statute is a concomitant civil remedy," Roger Rankin, 433 So.2d at 1250, nor relinquishing the task of judicial implication in the face of legislative faltering or uncertainty. In achieving this balance, we look to the Cort doctrine.
*790 Turning now to the first of the Cort factors, it is readily apparent that Chapter 827 of the 1979 Florida Statutes brings within its ambit not only abused and neglected children, but also those persons who, by their disability, are "substantially unable to protect [themselves] from the abusive conduct of others." § 827.09(1)(a), Fla. Stat. (1979). The latter category includes, but is not limited to, individuals who are mentally retarded, persons who suffer from epilepsy or cerebral palsy, and the mentally ill. Failure to report known or suspected instances of abuse of such individuals constitutes a second degree misdemeanor, the identical penalty as that levied for failure to report child abuse or neglect.
When scrutinizing the history of legislation to determine legislative intent, it is appropriate to consider acts passed at subsequent sessions. Watson v. Holland, 155 Fla. 342, 20 So.2d 388 (1944), cert. denied, 325 U.S. 839, 65 S.Ct. 1408, 89 L.Ed. 1965 (1945). In 1980, the legislature broadened Chapter 827 to extend its protection to "persons suffering from the infirmities of aging." § 827.09, Fla. Stat. (Supp. 1980). Failure to report abuse of the aged constitutes a second degree misdemeanor. In 1983, the legislature created out of section 827.07, the Child Abuse section, omnibus chapter 415, expansively titled "Protection from Abuse, Neglect, and Exploitation." The chapter reflects a further enlargement of the number of classes receiving protective and rehabilitative services, to include not only neglected or abused children, the elderly population, and persons suffering from myriad disabilities, but also spouses caught up in domestic violence.
The subsequent history of chapter 827, then, evidences a legislative intent to increase the number of classes protected by the legislation. The young, the aged, and the infirm all find shelter under the statutory provisions. It strains credulity to presume the legislature intended so broad a result as that a private right of action be available, by implication only, to classes which comprise half of our population. The query under Cort, whether S.M. is one of the class for whose especial benefit the statute was enacted, must therefore be answered in the negative.
Further, there is no indication, either explicit or implicit, to suggest a legislative intent to create a private remedy on behalf of individuals who are abused, neglected, or exploited. Cort. On those occasions when the legislature has expanded the classes and provided for increased protective services, it has not modified the penalty for non-reporters. To supply a civil remedy to those classes protected under the 1979 statute is to suppose that the legislature intended as well to provide a private right of action to the elderly but overlooked its inclusion when the aged were brought within the statute's provisions in 1980 and overlooked it yet again when the child abuse section was completely overhauled in 1983. The legislature has had ample opportunity to broaden the penalty for failure to report or to add a companion civil remedy. The unchanged nature of the penalty, in the face of repeated reenactments and revisions, implies an intention on the part of the legislature not to provide a private right of action.
Finally, an implied civil remedy is inconsistent with the underlying purposes of the legislative scheme. Cort. The thrust of the legislation is to help those who are abused, neglected or exploited; to preserve family life, where possible; to deal with the impact of such abuse on siblings, family structure, and the citizens of Florida; and to intervene, treat, and rehabilitate to forestall further harm. As the legislature has clearly stated, "[i]t is intended that the mandatory reporting of such cases will cause the protective services of the state to be brought to bear in an effort to prevent further abuse, neglect, and exploitation." § 415.101, Fla. Stat. (1983). Without question, the legislature intends that such protection be provided through increased supervision and regulation by HRS, rather than through implication of a private remedy.
The legislature established that violation of the mandatory reporting provision would constitute a second degree misdemeanor. To find a legislative intent to provide a *791 private right of action against non-reporters, we would have to ignore the well-established rule that a court may not disregard the plain purpose and language of the statutes to bring about what some of its members may conceive to be a more proper result. Vocelle v. Knight Bros. Paper Co., 118 So.2d 664 (Fla. 1st DCA 1960). Mindful that the courts may not "supply an omission that to all appearances was not in the minds of the legislators when the law was enacted," Special Disability Trust Fund, Dept. of Labor & Employment Sec. v. Motor & Compressor Co., 446 So.2d 224 (Fla. 1st DCA 1984); see Armstrong v. Edgewater, 157 So.2d 422 (Fla. 1963), we hold that S.M. Fischer is not afforded a civil cause of action for the failure of her father's psychiatrist to report alleged abuse.
Affirmed.
SCHWARTZ, C.J., and BARKDULL, HUBBART, NESBITT and FERGUSON, JJ., concur.
BASKIN, Judge (dissenting).
The issue presented for decision is whether section 827.07(3), Florida Statutes (1979), provides an abused child (or parents) a civil cause of action against a psychiatrist who fails to report his knowledge of a patient's child abuse.
Section 827.07(3) requires that reports of known or suspected child abuse or neglect be referred to the Department of Health and Rehabilitative Services. It provides:
(3) Any person, including, but not limited to, any:
(a) Physician, osteopath, medical examiner, chiropractor, nurse, or hospital personnel engaged in the admission, examination, care, or treatment of persons;
(b) Health or mental health professional other than one listed in paragraph (a);
... .
who knows, or has reasonable cause to suspect, that a child is an abused or neglected child shall report such knowledge or suspicion to the department in the manner prescribed in subsection (9).
Section 827.07(18)(a) provides a penalty for failure to report:
Any person required by this section to report known or suspected child abuse or neglect who knowingly and willfully fails to do so, or who knowingly and willfully prevents another person from doing so, is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
In our original opinion, we held that section 827.07(3) provides individuals within its purview causes of action against statutorily designated persons who fail to comply with its provisions.[1] I adhere to that view.
The majority recedes from Rosenberg v. Ryder Leasing, Inc., 168 So.2d 678 (Fla. 3d DCA 1964), and holds that because Chapter 827, Florida Statutes (1979), applies not only to abused and neglected children, but also to those people who are "substantially unable to protect [themselves] from the abusive conduct of others," § 827.09(1)(a), Fla. Stat. (1979), abused children are not *792 part of "the class for whose especial benefit the statute was enacted." Cort v. Ash, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26, 36 (1975). In my opinion, the majority's conclusion is erroneous. I find no basis to infer that the special benefits flowing to the class from the enactment of the statute are not available for enforcement by its individual members. I would continue to follow the Rosenberg holding that "[w]here a statute, though plainly penal in character, plainly imposes a duty for the benefit of a class of individuals, a right of action accrues to a person of such class injured through breach of that duty." Rosenberg, 168 So.2d at 680. Consequently, I would recognize the existence of a civil cause of action arising from a breach of the duties imposed by section 827.07(3), Florida Statutes (1979).
In holding that because the legislature did not expressly create a civil remedy, no civil cause of action may be derived from the statute, the majority misapplies the Supreme Court's analysis in Cort. The provision of a penal remedy does not preclude civil remedies. Migliore v. Crown Liquors of Broward, Inc., 448 So.2d 978 (Fla. 1984) (sale of intoxicating beverage to minor contrary to statue precluding such sale, gives rise to civil action in favor of third parties injured by intoxicated minor, notwithstanding that statute is criminal, not civil, in nature); Shaw v. Fletcher, 137 Fla. 519, 188 So. 135 (1939) (although rape is a crime, civil cause of action arises in favor of the victim); Williams v. Dickenson, 28 Fla. 90, 9 So. 847 (1891) (the crime of arson also gives rise to a civil remedy); Carson v. Jackson, 466 So.2d 1188 (Fla. 4th DCA 1985) (although child abuse statute states it applies to activities of HRS, broad language of statute indicates intent to discourage child abuse, whether by criminal prosecution or by civil lawsuit); Rosenberg (removal of mortgaged property from the county contrary to statutory duty to refrain from doing so is both a crime and a tort); see also Roger Rankin Enter., Inc. v. Green, 433 So.2d 1248 (Fla. 3d DCA 1983) (criminal statute precluding utterance of worthless check may contain implied civil right of action). See generally Cort, 422 U.S. at 79, 95 S.Ct. at 2088, 45 L.Ed.2d at 37 ("provision of a criminal penalty does not necessarily preclude implication of a private cause of action for damages."). The Cort test,[2] depends on whether the legislature intended implicitly or explicitly to create or to deny a civil remedy. Cort, 422 U.S. at 78, 95 S.Ct. at 2088, 45 L.Ed. at 36. Thus, the legislature's omission of a civil remedy may just as easily mean that it did not intend to deny a civil remedy as that the legislature did not intend to create one. Cort directs us to consider all relevant factors when implying a private right of action.
If we examine legislative intent, we find that section 827.07(1), Fla. Stat. (1979), states its purpose as: "to provide for comprehensive protective services for abused or neglected children ... in an effort to prevent further harm to the child or any other children living in the home and to preserve the family life of the parents and children, to the maximum extent possible, by enhancing the parental capacity for adequate child care." (Emphasis supplied). Statutes are to be construed in a manner that will effect their legislative purposes. Deltona Corp. v. Florida Pub. Serv. Comm'n, 220 So.2d 905 (Fla. 1969); Philip Crosby Assoc., Inc. v. State Bd. of Indep. Colleges, 506 So.2d 490 (Fla. 5th DCA 1987); Prudential Ins. Co. v. Baitinger, 452 So.2d 140 (Fla. 3d DCA 1984). Although the statute enlists HRS intervention as the vehicle for preventing abuse, its clear intent is to protect abused or neglected children. Cf. Carson, 466 So.2d 1188, 1191 (statute abrogating privilege in cases dealing with child abuse, § 415.512, Fla. Stat. (1981), cannot be read so narrowly as to apply only to activities conducted by HRS, when the language of the statute demonstrates a broader legislative intent to discourage child abuse. Thus, "[t]hat discouragement, in view of the statutory language, can occur by way of a civil lawsuit for damages as well as by way of a criminal prosecution.").
*793 Our jurisprudence rests on the principle that for every wrong, there is a remedy. Holland ex rel. Williams v. Mayes, 155 Fla. 129, 19 So.2d 709 (1944); Clausell v. Hobart Corp., 506 So.2d 1160 (Fla. 3d DCA 1987); Dominguez v. Bucyrus-Erie Co., 503 So.2d 364 (Fla. 3d DCA 1987); Art. 1, § 21, Fla. Const. We cannot condone the injury to a child resulting from a psychiatrist's unlawful failure to report his knowledge of a patient's repeated abuse any more than we could sit idly by and permit the continued harm to occur.
I would reinstate the action and let the trier of fact decide the merits of the claim. Contrary to the majority view, slip opinion, page two, footnote one, the doctor was not required by law to control his patient's behavior  his statutory obligation was merely to report. The court should not be reluctant to provide civil liability for unlawful failure to report known or suspected abuse  a statutory duty envisioned by the legislature as necessary to deter child abuse. The legislature took the necessary action; this court has deprived helpless victims of the legislature's intended shield.
NOTES
[1] Unlike other branches of medicine in which diagnoses and treatments evolve from objective, empirical, methodological foundations, "psychiatry is at best an inexact science, if, indeed, it is a science... ." Suggs v. LaVallee, 570 F.2d 1092, 1119 (2d Cir.) (Kaufman, C.J., concurring), cert. denied, 439 U.S. 915, 99 S.Ct. 290, 58 L.Ed.2d 263 (1978). Because of the inherent reliability problems, courts ought to be wary of imposing liability upon therapists. Nesbitt v. Community Health of South Dade, Inc., 467 So.2d 711 (Fla.3d DCA 1985) (Jorgenson, J., concurring and dissenting). Hofmann v. Blackmon, 241 So.2d 752 (Fla. 4th DCA 1970), cert. denied, 245 So.2d 257 (Fla. 1971), a case relied on by the dissent to analogize a common law duty to warn on the facts before us, serves only to highlight the distinction between psychiatry and the medical sciences. In Hofmann, a minor child contracted tuberculosis from her father before his condition was properly diagnosed. The court held that the duty owed by a physician to use reasonable care to advise immediate family members of the parameters of the highly contagious disease is not negated by he physician's failure to diagnose a condition easily within his professional ability to discover. However, "[u]nlike a physician's diagnosis, which can be verified by x-ray, surgery, etc., the psychiatrist cannot verify his diagnosis, treatment or predicted prognosis except by longterm follow-up and reporting." Nesbitt, 467 So.2d at 717 (citation omitted). Other Florida cases relied upon by the dissent to analogize a duty to warn are similarly inapposite. In Life Ins. Co. of Georgia v. Lopez, 443 So.2d 947 (Fla. 1983), the insured overheard relatives plotting his murder and related the plot to his agent. The supreme court was careful to characterize the case as "unique and [one that] must be decided narrowly on its facts," in finding that the insurer has a duty to investigate when apprised of a beneficiary's criminal motive in purchasing a policy. To hold otherwise, the court found, would allow the insurer to "make book" that murder will out.

Nova University v. Wagner, 491 So.2d 1116 (Fla. 1986), involved an institution that, for a fee, housed and rehabilitated children with behavioral and emotional problems. Two residents who had shown a propensity for physical violence ran away and beat two children, killing one. The court held that, having taken charge of persons likely to harm others, the institution had a duty to exercise reasonable care in its operation to avoid foreseeable attacks by its charges upon third parties. However, it is a commonplace that persons who assume custody of others, especially of children, place themselves in a special relationship necessitating special precautions. See Annot., 10 A.L.R.3d 619 (1966); Restatement (Second) of Torts § 315, §§ 316-319; Hasenei v. United States, 541 F. Supp. 999 (D.Md. 1982) (absent a relationship involving the right or ability on the psychotherapist's part to control a third person's conduct, exception to general rule in Restatement § 315 that there is no duty to control conduct of third person for protection of others should not be applicable). Notwithstanding the California supreme court's heavy reliance on § 315 in its opinion in Tarasoff v. Regents of University of California, 17 Cal.3d 425, 551 P.2d 334, 131 Cal. Rptr. 14 (1976), we agree with Judge Kaufman's analysis in Hasenei that "[t]he typical relationship existing between a psychiatrist and a voluntary outpatient would seem to lack sufficient elements of control necessary to bring such relationship within the rule of § 315." 541 F. Supp. at 1009. S.M.'s father was no more than a voluntary outpatient. It is abundantly clear that Dr. Metcalf had neither the right nor the ability to control his patient's behavior, nor does Dr. Metcalf's status as a statutorily designated reporter give rise to any "special relation" between himself and S.M. that would occasion a duty to her.
[2] The fourth factor examines whether the cause of action is one traditionally relegated to state law and of concern to the states, such that a cause of action ought not to be inferred based solely upon federal law.
[1] Many jurisdictions have established a common-law duty in situations analogous to the one before us. See, e.g., Lipari v. Sears, Roebuck & Co., 497 F. Supp. 185 (D.Neb. 1980); Tarasoff v. Regents of Univ. of California, 17 Cal.3d 425, 551 P.2d 334, 131 Cal. Rptr. 14 (1976); Mavroudis v. Superior Court for San Mateo County, 102 Cal. App.3d 594, 162 Cal. Rptr. 724 (1980); Furr v. Spring Grove State Hosp., 53 Md. App. 474, 454 A.2d 414 (1983); Bardoni v. Kim, 151 Mich. App. 169, 390 N.W.2d 218 (1986); Davis v. Lhim, 124 Mich. App. 291, 335 N.W.2d 481 (1983). But see Leedy v. Hartnett, 510 F. Supp. 1125 (M.D.Pa. 1981), aff'd, 676 F.2d 686 (3d Cir.1982). Florida has not established a common-law duty to warn under these circumstances; however, knowledge is one factor Florida courts consider in determining whether a duty exists. See Hofmann v. Blackmon, 241 So.2d 752 (Fla. 4th DCA 1970) (physician has duty to use reasonable care to advise and to warn members of patient's family once physician knows of dangerous disease), cert. denied, 245 So.2d 257 (Fla. 1971); see also Nova Univ., Inc. v. Wagner, 491 So.2d 1116 (Fla. 1986) (child care institution that accepts emotionally disturbed children it knew or should have known had a propensity to commit acts that might harm others owes duty to exercise reasonable care in its operation to avoid harm to general public); Life Ins. Co. of Georgia v. Lopez, 443 So.2d 947 (Fla. 1983) (seller of insurance has duty to investigate where it has actual knowledge of beneficiary's murderous intentions to its insured).
[2] Cort was concerned with the extension of federal rights of action beyond the protections afforded by state law. The Cort court was appropriately cautious in limiting federal expansion of state laws. We are not so constrained.