DECISION AND JUDGMENT ENTRY
This case is before the court on appeal from the grant of summary judgment by the Lucas County Court of Common Pleas in favor of appellees, State Farm Life Insurance Company ("State Farm"), and Dianne L. Michael. Appellant, Mark A. Michael, appeals those judgments and asserts the following assignments of error:
 "1. THE TRIAL COURT ERRED IN FAILING TO GRANT PLAINTIFF'S, MOTION TO DEEM PORTIONS OF DIANNE MICHAEL'S ADMITTED [sic] BECAUSE OF PATENT SHAM RESPONSES."
 "2. THE TRIAL COURT ERRED IN HOLDING THAT THE ONE YEAR STATUTE OF LIMITATIONS APPLICABLE TO ASSAULT AND BATTERY APPLIED TO THIS CIVIL CONSPIRACY TO DEFRAUD AN INSURER OF LIFE INSURANCE PROCEEDS THAT WAS TO BE CARRIED INTO EFFECT BY THE DEATH OF MARK MICHAEL, AND BY FAILING TO APPLY R.C. 2305.09(D).
 "3. THE TRIAL COURT ERRED IN HOLDING, AS A MATTER OF LAW, THAT MARK MICHAEL KNEW, OR BY THE EXERCISE OF REASONABLE DILIGENCE SHOULD HAVE KNOWN, THAT DIANNE MICHAEL WAS A PART OF SUCH CONSPIRACY FOR THE APPLICATION OF THE LIMITATION SET FORTH IN R.C. 2305.111.
 "4. THE TRIAL COURT ERRED IN HOLDING THAT STATE FARM WAS NOT NEGLIGENT BECAUSE IT HAD NO KNOWLEDGE OF DIANNE MICHAEL'S INTENT WHEN IT WAS UNDISPUTED THAT DIANNE MICHAEL WAS AN AGENT OF STATE FARM AND HER ACTUAL KNOWLEDGE OF THE PERSON'S FORGERY OF THE APPLICATION AND THE PERSON SUBMITTING THE APPLICATIONS MOTIVE FOR DOING SO IS ATTRIBUTED AS A MATTER OF LAW TO STATE FARM."
The undisputed facts of this case are as follows. Dianne L. Michael and Mark A. Michael were married in 1982. Either in 1986 or 1987, Dianne Michael became an agent of State Farm. In 1989, 1990 and 1992, Dianne filed applications for life insurance policies in the name of appellant. Appellant testified that the signature on these applications was not his signature and insisted that he gave his ex-wife permission to use his signature for only the 1989 policy.
On April 4, 1995, appellant was contacted by a medical facility that performs physicals on individuals who apply for life insurance. At that point, appellant and Dianne Michael were experiencing severe marital problems, and appellant knew that he neither wanted nor applied for another life insurance policy. Appellant called Dianne. She told him that this was a "reentry" of his life insurance in order to obtain premiums at a lower rate. Appellant then agreed to the reentry; he conceded in his deposition testimony that this was not a new policy, but was, indeed, a reentry for the purpose of maintaining or reducing his insurance premium. When he went for the physical, appellant learned that the amount for which he was insured under this particular policy was $250,000.
On April 26, 1995, appellant arrived home at approximately eleven-thirty in the evening. The outside lighting around the home and garage was "unplugged" and it was dark. After appellant exited his vehicle, he was attacked and beaten with a police baton, suffering severe head injuries. It was, within a short time, learned that appellant's assailant was Dianne's purported lover, Jonathan Scott Sass. Sass was arrested for felonious assault and convicted.
On April 25, 1997, appellant commenced the instant case against State Farm, Dianne Michael and Holly Hammond. Hammond, who was a roommate of Sass at the time of the assault, was the owner of the police baton used in the attack on appellant. Count One of the complaint alleged that Jonathan Sass and Dianne Michael conspired to murder appellant in order to obtain the proceeds of the $250,000 life insurance policy, and that because Dianne was an agent of State Farm, State Farm was responsible for its agent's:
 "securing a life insurance policy on the life of Mark A. Michael and knowing that the signature on the policy was forged and knowing that it was to constitute proceeds for such murder attempted."
In Count Two, appellant maintained that Jonathan Sass, Dianne Michael and State Farm, through its agent, Dianne Michael, conspired to "defraud" appellant of his "right to his signature, the right to insure his life, and the right to receive the proceeds of any insurance." Count Three claimed that Holly Hammond negligently gave, or allowed Sass access to, the baton used in the assault. Appellant also asserted that State Farm was negligent in issuing a life insurance policy in his name without knowing that his signature was forged and that the policy would provide the incentive to murder him.
After answering, the three named defendants each filed motions for summary judgment/motions to dismiss for failure to state a claim upon which relief could be granted. The trial court granted all three motions. The court determined that appellant's civil conspiracy claims were barred by the one year statute of limitations applicable to actions for assault and battery, as set forth in R.C. 2305.111. The court held that appellant failed to offer any facts demonstrating that Holly Hammond breached a duty, if any, owed to appellant and granted Hammond's motions for summary judgment[1]. The court also granted State Farm's motion for summary judgment on Count 3, finding that "no evidence was presented that State Farm had any knowledge of Diane [sic] Michael's intent [to murder appellant]."
We shall first consider appellant's second and third assignments of error as they both relate to appellant's conspiracy claims. In his second assignment of error, appellant contends that the trial court erred in referring to the "underlying cause of action" in order to determine the statute of limitations applicable to the civil conspiracy claims. Appellant suggests that the four year statute of limitations found in R.C. 2305.09(D), as applicable to cases involving injury not otherwise enumerated in R.C. Chapter 2305, should be employed in civil conspiracy cases. In the alternative, appellant argues that the underlying cause of action is fraud, a cause of action with a four year statute of limitations. See R.C. 2305.09(C).
In his third assignment of error, appellant contends that even in assuming that the one year statute of limitations is applicable, a question of fact exists as to whether he knew Dianne was implicated in the assault and battery.
The standard applied on review of appellant's second and third assignments of error, as well as his fourth assignment of error, is found in Civ.R. 56(C) and provides that summary judgment can be granted only if (1) no genuine issue of material fact remains to be litigated; (2) it appears from the evidence that reasonable minds can reach but one conclusion and that conclusion is adverse to the nonmoving party; and (3) the moving party is entitled to summary judgment as a matter of law. Horton v.Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, paragraph three of the syllabus. The party moving for summary judgment on the ground that the nonmoving party cannot prove its case bears the burden of delineating the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on one or more of the essential elements of the nonmoving party's claim. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. If the moving party satisfies this burden, the nonmoving party has a reciprocal burden, as outlined in Civ.R. 56(E), to set forth specific facts showing that there is a genuine issue for trial[2]. Id. at 293.
A civil conspiracy is "a malicious combination of two or more persons to injure another in person or property in a way not competent of one alone, resulting in actual damages." Kenty v.Transamerica Premium Ins. Co. (1995), 72 Ohio St.3d 415, 419, A civil conspiracy claim cannot succeed without an underlying unlawful act. Williams v. Aetna Fin. Co. (1998), 83 Ohio St.3d 464,475. Therefore, contrary to appellant's assertions, the appropriate statute of limitations is decided by examining the nature of the underlying cause of action. Krause v. Case WesternReserve Univ. (Dec. 19, 1996), Cuyahoga App. No. 70526, unreported; Cully v. St. Augustine Manor (Apr. 20, 1995), Cuyahoga App. No. 67601, unreported.
Count One of appellant's complaint expressly states a claim for a "Conspiracy to Murder" based upon the assault and battery of Mark Michael by Jonathan Sass. Thus, the trial court properly concluded that the one year statute of limitations is applicable to this count.
Count Two of the complaint ostensibly sets forth a claim of civil conspiracy based upon fraud. A showing of the tort of fraud requires, among other things, a false representation or the concealment of a fact and justifiable reliance upon the representation or concealment. Cohen v. Lamko, Inc. (1984),10 Ohio St.3d 167, 169. Appellant alleged in his complaint that Dianne told him that he needed to get a physical examination for a reduced rate on his insurance; he asserted that this was a false statement because the physical was for the purpose of obtaining an additional $250,000 policy. In his deposition testimony, appellant admitted that he knew that Dianne, after signing his name to requisite applications, obtained "two or three" insurance policies on his life. The evidence showed that the "new" $250,000 policy was issued in July 1990 and that the April 1995 policy was a reentry for the purpose of either maintaining or reducing the premium. Appellant's deposition testimony also reveals that he learned the amount of the policy at the time of his physical. Therefore, no evidence was presented to show that a false representation or concealment was made or that appellant justifiably relied on any statement concerning the $250,000 reentry policy. Because the substantive cause of action on which the conspiracy claim in Count Two is based is without merit, appellants' conspiracy claim must also fail. WolferEnterprises, Inc. v. Overbrook Development Corp. (1999),132 Ohio App.3d 353; Minarik v. Nagy (1963), 8 Ohio App.2d 194, 195.
Moreover, we must look beyond the title given to the cause of action in a pleading and examine the language of the pleading to determine appellant's claim for relief. Feeney v.Eshack (1998), 129 Ohio App.3d 489; Wolf v. Lakewood Hosp. (1991),73 Ohio App.3d 709, 714. A careful review of Count Two of appellant's complaint discloses that the nature of the claim in that count is, once again, based upon assault and battery. That is, in Count Two, appellant inextricably links the insurance policy to the assault and battery as simply the motive or incentive for the intentional, offensive touching. Thus, the trial court correctly ascertained that the one year statute of limitations in R.C. 2305.111 was applicable to Count Two.
The alleged assault and battery occurred on April 26, 1995. Appellant did not file this action until April 25, 1997. Therefore, his conspiracy claims are barred. Appellant argues, however, that, at the least, questions of fact exist, as to whether he knew Dianne was involved in the assault of April 26, 1995, within one year of the filing of his conspiracy claims. R.C. 2305.111(A) and (B) provide that an action for assault and battery accrues on the date which the alleged assault and battery occurred or the earlier of the following dates: (1) the date the plaintiff learns the identity of alleged assailant; or (2) the date that he should have, by the exercise of reasonable diligence learned the identity of that person. Appellant maintains that he did not actually know that Dianne was involved in the assault and battery until he was shown the April 1995 life insurance policy in June 1996. Nevertheless, in his deposition testimony, appellant stated that he immediately suspected that Dianne was involved in the assault because the outside lights to the marital residence were unplugged. He admitted that his parents told the police that Dianne was implicated in that assault on the night he was taken to the hospital. Furthermore, appellant acknowledged that, shortly after the attack, the police told him that Sass disclosed that Dianne participated in the "attempted murder." Based on appellant's own deposition testimony, we find that reasonable minds could only conclude that appellant knew that Dianne played a role in the assault and battery or should have known, in the exercise of reasonable diligence, that she played such a role shortly after April 26, 1995. Consequently, the trial court did not err in granting summary judgment to Dianne Michael and State Farm on Counts One and Two of appellant's complaint. Appellant's second and third assignments of error are found not well-taken.
Due to our disposition of appellant's second and third assignments of error, we need not reach the merits of appellant's first assignment of error and the same is, hereby, found moot.
In his fourth assignment of error, appellant contends that the trial court erred in granting summary judgment to State Farm on his claim asserting that State Farm was negligent in issuing a life insurance policy that was an incentive/motive for murder. He asserts that Dianne Michael was acting within the scope of her employment when she submitted his application for insurance and that, therefore, her knowledge of her alleged intent to murder for profit must be imputed to her principal, State Farm.
While there are no cases in Ohio that discuss the viability of appellant's claim, an action based upon an insurer's negligent issuance of a life insurance policy has been recognized in other jurisdictions. See, e.g., Williams v. John Hancock Mut.Life Ins. Co. (Mo.App. 1986), 718 S.W.2d 611. See generally, Annotation, Insurer's Liability for Wrongful or Negligent Issuance of Life Policy (1985) 37 A.L.R.4th 972. Our research discloses that the trial court relied on the case most similar to the one before us in granting State Farm's motion for summary judgment on Count Three of appellant's complaint. See Life Ins.Co. of Georgia v. Lopez (S.C. Fla. 1983), 443 So.2d 947.
In Lopez, the plaintiff's wife tricked him into signing an application for almost $400,000 worth of life insurance by telling him the papers involved the purchase of health insurance.Id. at 948. Subsequently, Lopez overheard his wife and her brother plotting to kill him. According to Lopez, he immediately informed his insurance agent of the plot, but the insurance company did not investigate the allegation. Lopez's wife and brother-in-law attempted to kill him, but he was saved when a deputy sheriff arrived on the scene. Id. The Florida Supreme Court found that an insurer issuing a life insurance policy can be held liable in tort where the life insurance company has _actualnotice of the policy beneficiary's murderous intentions toward the insured. Id. at 949. The Lopez court reasoned that an insurer with actual notice of such intent has a duty to investigate the matter and eliminate the motive for the insured's death, by either voiding the life insurance policy or, at the very least, warning the beneficiary that no proceeds would be paid if he/she murdered the beneficiary. Id. We find the reasoning in Lopez persuasive.
As a result, and assuming, without deciding, that the claim set forth against State Farm in Count Three of appellant's complaint is cognizable under Ohio law, the trial court did not err in granting summary judgment to State Farm because appellant failed to offer any specific facts creating a genuine issue of material fact as to whether State Farm had actual, rather than imputed[3], notice of Dianne's alleged murderous intent. Accordingly, appellant's fourth assignment of error is found not well-taken.
The judgment of the Lucas County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant Mark A. Michael.
James R. Sherck, J., Richard W. Knepper, P.J., Judges concur.
 ________________________ Melvin L. Resnick, J.
[1] Although Hammond is not named in Counts One and Two of appellant's complaint, she filed a motion for summary judgment on those two claims. The trial court also granted this motion. Because appellant does not appeal the judgment granted in favor of Holly Hammond, we need not address the issue of whether she was included as a defendant in his conspiracy claims.
[2] While it does not affect the outcome of this case, we are compelled to note that the trial court cited Wing v. AnchorMedia, Ltd. of Texas (1991), 59 Ohio St.3d 108, paragraph three of the syllabus, as the authority for stating that "[a] motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial." However, in Dresher v. Burt, 75 Ohio St.3d 280, 295, the Ohio Supreme Court limited paragraph three of the syllabus of Wing
by modifying the nonmovant's burden to that stated in the body of this decision.
[3] At common law, ordinarily the knowledge of an agent, received while he is acting within the scope of his authority and in reference to a matter over which his authority extends, is imputed to such agent's principal. Saunders v. Allstate Ins. Co.
(1958), 168 Ohio St. 55.