682 So.2d 574 (1996)
Kenneth BENNIS and Micheline Bennis, His Wife, Willis Carl and Santa Carl, His Wife, and Richy C. Bramos and Tina Bramos, His Wife, Appellants,
v.
STATE CHEMICAL MANUFACTURING CO., an Ohio Corporation, Canterbury House Apartments, a Limited Partnership, and Professional Properties, Incorporated, a Florida Corporation, Appellees.
No. 95-0210.
District Court of Appeal of Florida, Fourth District.
October 16, 1996.
Rehearing Denied November 18, 1996.
*575 Ben J. Weaver and Cinthia Manzano of Weaver & Weaver, P.A., Fort Lauderdale, for appellants.
Kimberly L. Boldt of Russo & Talisman, P.A., Coconut Grove, and Green, Haverman & Ackerman, P.A., Fort Lauderdale, for appellees Canterbury House Apartments and Professional Properties, Incorporated.
POLEN, Judge.
Three firefighters Bennis, Carl, and Bramos and their wives appeal the trial court's entry of final summary judgment against them in their action for damages for personal injuries to the firefighters from their unexpected exposure to hazardous chemicals while responding to a report of smoke in a residential apartment unit in Appellee Canterbury House Apartments. We affirm in part and reverse in part.
Appellant firefighters were dispatched in connection with a report of smoke coming from a unit in Canterbury House Apartments (Canterbury) on January 7, 1988. At that time, Larola Gamble (Gamble) was employed as a property manager by appellee Professional Properties, Inc. (Professional), which had purchased Canterbury. She testified that on the day of the incident, a resident advised her there was smoke coming out of unit 106. That unit was an apartment being used as a maintenance room; however, it was not differentiated in its outward appearance from any other apartment.
Checking out the problem, Gamble found a pale blue haze coming from the area which would be the master bedroom in the apartment. She determined it was a chemical problem because the haze was concentrated over a box near the water heater, and she detected a definite chemical smell. According to Gamble, she called 911 and requested the fire department, telling the dispatcher she had a chemical reaction and needed foam.
Fire Chief Terrance Stewart, however, testified that the fire department received only a standard smoke-in-an-apartment call, not a hazardous materials call. Fire Marshal John D. Ruley, Jr. heard the dispatcher report fire in a building. Firefighters Rickey Baker and *576 Robert Riccardi (Riccardi) heard the call as a report of smoke in a structure. Appellant Bennis said the call came in as a smoke investigation. He asked "fire central," which relayed the information, whether they had any other information on the call; they said they did not. Bennis, Carl, and Bramos were among those dispatched to the scene in their capacity as firefighters.
After making the call, Gamble returned to the maintenance room and kicked the box out of the way of the water heater. Then she went to await the fire truck. About ten minutes after her call, one truck arrived, a firefighter approached, and she indicated to him which room in which apartment had the problem. She claims to have told him that there was a chemical reaction before he went in.
According to Bennis' deposition, when he arrived at Canterbury, he saw the door to the apartment was open and he told the men to stand by while he investigated. He saw a black woman sitting behind a desk in the apartment. He saw no smoke or flames, so he entered the apartment. The woman told him she was the apartment manager and that something was smoking in the back room. He escorted her out, leaving her at the front door, and went back in. The door to the room was not hot and no smoke was coming out from under the door. When he opened the door and stepped inside, he saw fumes coming from a cardboard box. He fell to his knees from the fumes and started vomiting and gasping for air. He went down a couple of feet from the front door, fighting against blacking out. Carl and Bramos pulled him out and took him directly to the paramedics.
Fire Chief Stewart arrived on the scene about five minutes later, after Bennis had been removed from the apartment. He questioned Gamble about what was in the box and she replied that it was used for cleaning out drains. Based on that information, a hazardous materials team was called. The hazardous materials team verified that the open cardboard box, which was not the original container, held a caustic material, dangerous through contact or the inhaling of vapors. The cardboard box had been wet by water leaking from the water heater. The original container was identified by one of Canterbury's maintenance men, and it contained sodium hydroxide manufactured by appellee State Chemical Manufacturing Company. The maintenance personnel had put the material in the box to move it around more easily than the original five-gallon bucket.
After the incident, the fire marshal wrote a violation notice because Canterbury's management had filed no material safety data sheets with the fire department, the storage area was not marked as containing hazardous material, and there was no licensing with the Environmental Quality Control Board.
In their third amended complaint, appellants filed suit against Canterbury, Professional and State Chemical for damages for personal injuries resulting from Bennis', Carl's, and Bramos' exposure to the chemical combustion reaction involving water and improperly stored sodium hydroxide, identified as State Sewer Solvent number 7. Counts I-III, against Canterbury and Professional, alleged gross negligence for their failure to warn, gross negligence in creating a hazard, and breach of duty under chapter 442, Florida Statutes. The remaining counts, not involved in this appeal, alleged State Chemical's negligence and the wives' loss of consortium.
As to the three counts against them, Canterbury and Professional moved for summary judgment, asserting that appellants' claims were barred by the fireman's rule and that chapter 442, designed to protect employees in the workplace, did not create a civil cause of action for firefighters. The court granted the motion and entered final summary judgment for Canterbury and Professional.
We agree with the trial court that chapter 442 of the Florida Statutes, Florida's Occupational Safety and Health Act, does not create a private cause of action enforceable by emergency personnel who are injured through an employer's violation of the statute. The purpose of that act is to protect employees from accidents, occupational diseases and fatalities compensable under the workers' compensation law. § 442.003, Fla. Stat. (1995). Appellants have not demonstrated *577 a legislative intent to create such a remedy, nor that the toxic substances notice provisions were intended for their especial benefit. See Murthy v. N. Sinha Corp., 644 So.2d 983 (Fla.1994); Griffith v. Department of Health & Rehabilitative Servs., 624 So.2d 813 (Fla. 4th DCA 1993); Johnson v. Walgreen, 675 So.2d 1036 (Fla. 1st DCA 1996); Fischer v. Metcalf, 543 So.2d 785 (Fla. 3d DCA 1989). We affirm the summary judgment in favor of appellees as to that count of the complaint.
As to appellants' negligence counts, we agree with appellees that section 112.182(1), Florida Statutes (1995), abolishing the firefighter's rule, does not apply to the instant cause of action, because the incident took place in 1988, prior to the 1990 enactment of that statute. Ch. 90-308, § 2, at 2514, Laws of Fla. (providing act would take effect upon becoming law); Lanza v. Polanin, 581 So.2d 130, 131 n. 1 (Fla.1991) (finding no basis to apply law retroactively); Farrell v. Fisher, 578 So.2d 407, 409 (Fla. 4th DCA 1991). The common law firefighter's rule limited the duty owed firefighters and police officers in discharging their duties to the duty owed to a licensee; the purpose of the rule was to permit individuals requiring assistance "to summon aid without pausing to consider whether they will be held liable for consequences which, in most cases, are beyond their control." Kilpatrick v. Sklar, 548 So.2d 215, 217 (Fla.1989) (quoting Rishel v. Eastern Airlines, Inc., 466 So.2d 1136, 1138 (Fla. 3d DCA 1985)). The statute instead now confers on the firefighter or officer the status of an invitee. § 112.182(1), Fla.Stat. (1995).
Even applying the firefighter's rule, however, we conclude that the trial court erred in granting appellees summary judgment on the remaining counts. Under the facts of this case, there remained a genuine issue of material fact: whether appellees, having the obligation and opportunity to do so, failed to warn the firefighters of the toxic chemical reaction.
The firefighter's rule does not preclude recovery under all circumstances in which a firefighter is injured in the discharge of his or her duties; instead, once the firefighter's presence on the premises is known or reasonably anticipated by the owner,
the owner has the obligation to refrain from wanton negligence or wilful [sic] conduct and to warn the licensee of defects or conditions known to the owner to be dangerous when such danger is not open to ordinary observation by the licensee and when there is reasonable opportunity to give such warning.

Price v. Morgan, 436 So.2d 1116, 1121 (Fla. 5th DCA 1983) (emphasis added), petition for review denied, 447 So.2d 887 (Fla.1984).
While the rule precludes recovery for acts of simple negligence leading to the very risk necessitating the firefighter's presence, such as any negligence of appellees in placing the sodium hydroxide in a cardboard box on the floor next the water heater, it does not bar recovery for independent acts of misconduct or for failure to warn of a hidden danger when there was knowledge of the danger and an opportunity to warn. See Kilpatrick, 548 So.2d at 219 (Ehrlich, C.J., concurring in part and dissenting in part); Price, 436 So.2d at 1121 (affirming dismissal of complaint alleging only acts of ordinary negligence which caused fire requiring firemen's presence; noting appellant alleged neither facts that could constitute wanton negligence or willful conduct after firemen's arrival, nor opportunity to warn upon arrival, nor facts from which firemen's presence on premises could have been anticipated).
While appellants failed to allege any facts which could constitute wanton negligence or willful misconduct, there were sufficient allegations of and material issues of fact concerning appellees' alleged failure to warn. Therefore, we reverse the summary judgment entered in favor of appellees as to these issues and remand for further proceedings.
GLICKSTEIN and DELL, JJ., concur.